# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

JYOTI GAUTAM MURRAY and ALLEN
PERRY, on behalf of themselves and all others
similarly situated,

    Plaintiffs,

   vs.

METRO FIBERNET, LLC d/b/a METRONET,

    Defendant.

No. 3:24-cv-00131-MPB-CSW

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
# TO DISMISS, OR, IN THE ALTERNATIVE,
# TO STRIKE CERTAIN ALLEGATIONS IN THE COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

1. METRONET ........................................................................................................ 2

2. PLAINTIFF PERRY ........................................................................................... 3

3. PLAINTIFF MURRAY ....................................................................................... 5

ARGUMENT ................................................................................................................. 6

I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) .................................................................................................. 6

    A.   Plaintiffs Fail to State Their Fraud-Based Claims with Sufficient Particularity ................................................................................................. 6

    B.   Murray's Indiana-Law Claim Is Barred by the Statute of Limitations ................. 9

    C.   Plaintiffs' Claims Are Barred By the Voluntary Payment Doctrine ................... 10

    D.   Murray Cannot Bring a Claim Under Kentucky Law, and Perry Cannot Bring a Claim Under Minnesota Law ................................................ 11

    E.   Plaintiffs Fail To State an Unjust Enrichment Claim ......................................... 13

II.  PLAINTIFFS' REFERENCES TO ANONYMOUS COMPLAINTS MUST BE STRICKEN ............................................................................................. 13

CONCLUSION ............................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agrolipetsk, LLC v. Mycogen Seeds*,
No. 1:16-cv-03414-SED-MPB, 2017 WL 7371191 (S.D. Ind. June 5, 2017)........................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................6

*Carroll v. BMW of N.A.*,
LLC, 553 F. Supp. 3d 588 (S.D. Ind. 2021) ...................................................................9

*City of Covington v. Powell*,
1859 WL 5581 (Ky. Ct. App. 1859) ..............................................................................10

*Cohen v. Am. Sec. Ins. Co.*,
735 F.3d 601 (7th Cir. 2013) .........................................................................................13

*Driver v. LJ Ross Assoc., Inc.*,
No. 3:18-cv-00220-MPB-RLY, 2019 WL 4060098 (S.D. Ind. Aug. 28, 2019).......................4

*Freson v. CenterPoint Energy Inc.*,
No. 3:19-cv-00075-MPB-RLY, 2020 WL 13574992 (S.D. Ind. July 20, 2020).......................4

*Gibson v. Eagle Family Foods Grp, LLC*,
No. 1:22-cv-02147-TWP-MKK, 2023 WL 5574625 (S.D. Ind. Aug. 29, 2023) ...................13

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 ....................................................................................................................13

*Gratz v. Redd*,
1843 WL 3535 (Ky. Ct. App. 1843) ..............................................................................10

*Hardin v. Am. Elec. Power*,
188 F.R.D. 509 (S.D. Ind. 1999).....................................................................................13

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ...........................................................................................4

*Ikechi v. Verizon Wireless*,
No. 10-vc-4554, 2011 WL 2118797 (D. Minn. Apr. 7, 2011) .................................................8

*Joannin v. Ogilvie*,
52 N.W. 217 (Minn. 1892)...............................................................................................10

*Johannessohn v. Polaris Ind., Inc.*,
    450 F. Supp. 3d 931 (D. Minn. 2020) ................................................................. 11

*Kennedy v. Prime Hydration*,
    No. 3:23-cv-00476-GNS, 2024 WL 3826529 (W.D. Ky. Aug. 14, 2024) .............. 9

*Lyons v. Leatt Corp.*,
    No. 4:15-cv-17-TLS, 2015 WL 7016469 (N.D. Ind. Nov. 10, 2015) ...................... 7

*Mashallah, Inc. v. West Bend Mutual Ins. Co.*,
    20 F.4th 311 (7th Cir. 2021) .............................................................................. 13

*Masterson Personnel, Inc. v. The McClatchy Co.*,
    No. 05-1274RHKJJG, 2005 WL 3132349 (D. Minn. Nov. 22, 2005) .................... 8

*McCauley v. City of Chi.*,
    671 F.3d 611 (7th Cir. 2011) ................................................................................ 6

*Minn. Pipe and Equipment Co. v. Ameron Int'l Corp.*,
    938 F. Supp. 2d 862 (D. Minn. 2013) ................................................................. 10

*Nunez v. Best Buy Co., Inc.*,
    315 F.R.D. 245 (D. Minn. 2016) ........................................................................... 9

*Randazzo v. Harris Bank Palatine, N.A.*,
    262 F.3d 663 (7th Cir. 2001) .............................................................................. 10

*Rubio v. Polaris*,
    No. 1:21-cv-03006-JRS-MG, 2022 WL 13909757 (S.D. Ind. Oct. 24, 2022) ........ 7

*Shea v. General Motors LLC*,
    567 F. Supp. 3d 1011 (N.D. Ind. 2021) ................................................................ 7

*Simpson v. Champion Petfoods USA, Inc.*,
    397 F. Supp. 3d 952 (E.D. Ky. 2019) ................................................................. 12

*SMC Corp. v. Peoplesoft USA, Inc.*,
    No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641 (S.D. Ind. Oct. 12, 2004) ........... 7

*Stevens v. Motorists Mut. Ins. Co.*,
    759 S.W.2d 819 (Ky. 1988) ................................................................................ 12

*Time Warner Enter. Co., L.P. v. Whiteman*,
    802 N.E.2d 886 (Ind. 2004) ............................................................................... 10

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ................................................................................ 4

**Statutes**

Ind. Code § 24-5-0.5-1 *et seq.*............................................................................................6

Ind. Code § 24-5-0.5-5............................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 8(a)(1)-(2)......................................................................................................6

https://www.metronet.com/...................................................................................................2

# INTRODUCTION

Plaintiffs Jyoti Gautam Murray and Allen Perry have brought this putative class action against Metronet Fibernet, LLC d/b/a Metronet ("Metronet") alleging that Plaintiffs signed up for Metronet internet service based on pricing representations made by Metronet in "advertising and marketing materials" that failed to disclose a monthly Technology Services Fee or Tech Assure Fee ("TAF"). Remarkably, although Plaintiffs allege that they signed up for Metronet internet service "[b]ased on" and "[i]n reliance on Metronet's representations made in its advertisements and marketing materials" (Cmplt ¶¶30, 32, 39, 41) – and thus their ***entire claim*** hinges on whether Metronet did or did not disclose the TAF in the materials on which Plaintiffs relied – Plaintiffs have not identified even one of the "advertising and marketing materials" such that Metronet can meaningfully defend itself. Plaintiffs' failure to plead with specificity violates Rule 9(b) of the Federal Rules of Civil Procedure, and for this reason alone, the Complaint should be dismissed.

Plaintiffs' claims also should be dismissed based on the voluntary payment doctrine because, after learning that they were being charged a TAF, Plaintiffs continued to pay the TAF without protest, even though they acknowledge they had other internet-access options. Murray's claim under the Indiana consumer fraud statute should be dismissed because it was filed outside the two-year statute of limitations. And, Plaintiffs' claims under the Minnesota and Kentucky consumer fraud statutes should be dismissed because those statutes do not give an out-of-state resident the right to bring a claim against an out-of-state defendant.

Alternatively, this Court should (pursuant to Federal Rule of Civil Procedure 12(f)) strike Paragraph 47 of the Complaint, which contains anonymous, unverified, and unverifiable allegations against Metronet.

## BACKGROUND

**1.     Metronet**

Metronet is an internet service provider based in Evansville, Indiana that operates in 17 states.  (Cmplt ¶13.)

As discussed below, Plaintiffs do not identify the specific advertisements or marketing materials on which their claims are based.  They *do* include in the Complaint (at Paragraphs 17-18) what they allege is an example (again, without alleging that Plaintiffs actually saw this particular example) of a pricing representation from the Metronet website where Metronet falsely represented that the price of its lowest internet service plan is "$29.95/month":



(Cmplt ¶18.)

However, in making this allegation, Plaintiffs misleadingly omit the asterisk next to "$29.95/mo" – as the illustration clearly shows, the advertisement actually says "$29.95/mo*" – and Plaintiffs misleadingly do not include or even acknowledge the language to which the asterisk refers.  That is because the Metronet website has at all relevant times included a statement like the current statement set out below [1] that expressly includes verbiage that "[t]he advertised price does

---

[1] https://www.metronet.com/, last visited September 23, 2024.  Metronet cites the current Metronet website (as of September 23, 2024) because Paragraphs 17-18 of the Complaint do not cite to the date or time from which Plaintiffs obtained the images identified in those paragraphs.  If the Complaint is not dismissed, Metronet will also demonstrate that a user who clicks "select this plan" necessarily sees additional details pricing details as part of the sign-up process, including a breakdown of fees that includes the TAF.

not include applicable taxes and fees (including installations fees and $12.95 per month Tech Assure fee)":

*Offers subject to change; available to new residential customers only. May not be combined with other offers. Services are subject to all applicable Terms and Conditions. In select markets, Metronet may offer asymmetrical speeds. Advertised speed based on wired connection and compatible equipment; see our Network Management and Broadband Internet Service Disclosures for more details. Services not available in all areas. Restrictions apply. The pricing for the 1 Gb/1 Gb offer is locked for the first twelve months of service. The price will increase by $10 per month at the beginning of the thirteenth month of service. At the beginning of the twenty-fifth month of service, the price will increase by another $10 per month. At the beginning of the thirty-seventh month of service, Metronet's then current standard rate will apply. An eero router is provided at no additional cost when purchasing Metronet internet speeds up to 5 Gb; and equipment must be returned at time of cancellation. Gift Card offer requires purchase of 1 Gb/1 Gb or 2 Gb/2 Gb speeds between September 4, 2024 - September 30, 2024. To redeem gift card offer, customer must pay for 2 full months of qualified service(s). After 2 full months of payments, a link will be emailed to the account holder to claim the gift card. If eligible, your gift card will be mailed in 6-8 weeks. If qualified services are canceled or downgraded before the 12th month, the gift card amount will be billed to the customer account. One gift card offer per household. Upon any service suspension or voluntary service downgrade, pricing will revert to Metronet's then-current standard rates.**A trademark of Ziff Davis, LLC. Used under license. Reprinted with permission.© 2024 Ziff Davis, LLC. All Rights Reserved. The advertised price does not include applicable taxes and fees (including installation fees and $12.95 per month Tech Assure fee).

## 2. Plaintiff Perry

Plaintiff Perry is a Kentucky resident who signed up for Metronet internet service in April 2024. (Cmplt ¶38.) Perry alleges that he selected Metronet from among other Internet service providers "[i]n reliance on Metronet's representations made in its advertisements and marketing materials…." (Cmplt ¶39.) He does not identify what advertisements and marketing materials he relied on, or whether the representation was made by Metronet or a third party; he only alleges "[u]pon information and belief" that he was "first exposed to Defendants' representations … via an online promotion." (Cmplt ¶40.) Notably, Perry does not even allege that the "online promotion" (or whatever advertising and marketing materials his claim is based on) failed to disclose the TAF; rather, he carefully alleges that he did not "learn of the [TAF] until he signed up with Metronet over the phone and called to set up installation." (Cmplt ¶43.) Of course, even taking as true the allegation that he "first learned" about the TAF when he spoke to Metronet on the telephone, Perry chose to proceed with finalizing his Metronet order and scheduling installation of Metronet internet service rather than obtaining service from another provider.

After the phone call described in Paragraph 43 of the Complaint in which Perry acknowledges he learned of the TAF, Metronet sent Perry an e-mail confirming his April 18, 2024

order and setting an installation date of April 19, 2024 (the "Perry Summary E-mail," Dkt No. 13-1.[2]) The Perry Summary E-mail included a summary of monthly charges that disclosed a Tech Assure Fee of $12.95 and confirmed an installation date of April 19, 2024. (*Id.* at 1.) Again, rather than canceling the installation and proceeding with a different internet provider, Perry proceeded with the installation on April 19, 2024. In doing so, Perry signed a document acknowledging that the installation had taken place, and stating that he had "received, read, and agree to the Terms and Conditions attached to this Service Order and the Additional Terms of Service Addendum which has been presented in my customer package" ("Perry Installation Confirmation," Dkt No. 13-2). Perry further acknowledged with his signature that "I understand and agree to the Terms and Conditions of this Service Order, including the Additional Terms of Service and approve installation." (*Id.* at 2-3.) The Terms and Conditions and Additional Terms of Service Addendum disclosed the TAF. ("Terms and Conditions," Dkt No. 13-3 at 8.)

Perry does not (and cannot) allege that after he became aware of the TAF during his phone call to set up installation (Cmplt ¶43) he chose to proceed with Metronet irrespective of the TAF instead of choosing another internet service provider. To the contrary, Perry remains a customer through the date of this filing and has paid his monthly charges (including the TAF) without

---

[2] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiffs['] complaint and are central to [their] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (admitting letters referred to in the complaint that established the parties' contractual relationship). *See also Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (upholding district court's consideration of documents attached to a motion to dismiss which were "central to plaintiffs' case"); *Freson v. CenterPoint Energy Inc.*, No. 3:19-cv-00075-MPB-RLY, 2020 WL 13574992, at *1 (S.D. Ind. July 20, 2020) ("A court may consider documents as part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claims…[t]hus so long as the documents are integral to or explicitly relied upon in the complaint, the court may consider them without converting a motion to dismiss into one for summary judgment) (citing *Venture*); *Driver v. LJ Ross Assoc., Inc.*, No. 3:18-cv-00220-MPB-RLY, 2019 WL 4060098, fn 1 (S.D. Ind. Aug. 28, 2019) ("[w]hile the letter was not included with [plaintiff's] complaint, the Court may consider it with [defendant's] motion to dismiss because it is referred to extensively in the complaint, it is central to [plaintiff's] claim, and [plaintiff] does not dispute its authenticity) (citing *Venture*); Federal Rule 8(e) ("[p]leadings must be construed so as to do justice").

protest, even though he acknowledges that he has other internet options available to him and he is on a month-to-month contract that can be terminated at any time.

## 3. Plaintiff Murray

Plaintiff Murray is a Minnesota resident who alleges that she signed up for Metronet internet service on August 28, 2022. (Cmplt ¶29.) Murray alleges that she selected Metronet from among other Internet service providers "[i]n reliance on Metronet's representations made in its advertisements and marketing materials…." (Cmplt ¶30.) She does not identify what representations Metronet allegedly made or the advertisements and marketing materials she relied on; she only alleges "[u]pon information and belief" that she was "exposed to Defendant's representations … via mailing flyers sent to her apartment rental address and on billboards…." (Cmplt ¶31.) Murray does not even allege that the "mailing flyers" and "billboard" (or whatever advertising and marketing materials her claim is based on) failed to disclose the TAF; rather, she carefully alleges that she "did not discover the [TAF] until she received her monthly bill reflecting the [TAF]." (Cmplt ¶34.)

Metronet's records show that Murray actually signed up for Metronet service in March 2022, and Metronet sent her an e-mail confirming her order and setting an installation date of March 25, 2022 (the "Murray Summary E-mail," Dkt No. 13-4). The Murray Summary E-mail states in two places that Murray would be charged a Technology Service Fee of $9.95 per month. (*Id.* at 1, 2.)

During her installation on March 25, 2022, Murray signed a document acknowledging that the installation had taken place, and stating that she had "received, read, and agree to the Terms and Conditions attached to this Service Order and the Additional Terms of Service Addendum which has been presented in my customer package" ("Murray Installation Confirmation," Dkt No. 13-5). Murray further acknowledged with her signature that "I understand and agree to the Terms

5

and Conditions of this Service Order, including the Additional Terms of Service and approve installation." (*Id.* at 2-3.)

As Plaintiff acknowledges (Cmplt ¶34), the $9.95 Technology Service Fee appeared as a line item on Murray's first invoice, dated March 28, 2022. ("Murray First Invoice," Dkt No. 13-6 at 2.)

Murray does not (and cannot) allege that, when she became aware of the TAF she terminated her relationship with Metronet. Nor did Murray cancel her Metronet internet service when she received her first bill, which clearly identifies the TAF. Indeed, Murray has remained a Metronet customer ***for over two years*** after she became aware of the TAF, paying each monthly invoice (including the TAF) without protest, even though she acknowledges that she has other internet options available to her and she is on a month-to-month contract that can be terminated at any time.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).[3]

### A.    Plaintiffs Fail to State Their Fraud-Based Claims with Sufficient Particularity.

Under Federal Rule of Civil Procedure 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud…." Plaintiffs have failed to meet the heightened pleading requirement under Rule 9(b) for each of their fraud-based claims.

---

[3] To survive dismissal under Rule 12(b)(6), a complaint must provide "a short and plain statement" that establishes the grounds for the court's jurisdiction and shows "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiffs fail to state a claim under this standard.

To adequately state a claim under the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 *et seq.* (the "IDCSA"), plaintiffs must satisfy the heightened pleading requirements of Rule 9(b). *Lyons v. Leatt Corp.*, No. 4:15-cv-17-TLS, 2015 WL 7016469, at *4 (N.D. Ind. Nov. 10, 2015). *See also Shea v. General Motors LLC*, 567 F. Supp. 3d 1011, 1024 (N.D. Ind. 2021); *SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641, at *5 (S.D. Ind. Oct. 12, 2004). That means plaintiffs "must state 'the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Lyons*, 2015 WL 7016469, at *4. This is because, in a fraud case, it is necessary to "ensure that the party accused of fraud…is given adequate notice of the ***specific activity*** that the plaintiff claims constituted fraud so that the accused party may file an effective responsive pleading" and that the allegations at issue properly put defendants on notice. *Rubio v. Polaris*, No. 1:21-cv-03006-JRS-MG, 2022 WL 13909757, at *4 (S.D. Ind. Oct. 24, 2022) (emphasis added).

*Lyons* is illustrative of Indiana law on this point. In *Lyons*, the plaintiff asserted a claim under the IDCSA because the defendant allegedly made false representations that the product at issue (a brace used in motocross activities) would protect consumers from injury, that the product had been tested and reviewed for safety, and the product was safe for use for particular activities. *Lyons*, 2015 WL 7016469, at *1. Plaintiff also alleged that defendant's misrepresentations "were made 'through its marketing, advertising and/or promotion'" of defendant's product, and that "such representation[] constitute[d] an 'incurable deceptive act.'" *Id.* at *4. The court, relying on Rule 9(b), agreed with defendant that plaintiff failed to state its claim with sufficient particularity. *Id.* The court reasoned that "[w]hile the Amended Complaint contain[ed] sufficient facts to establish the identity of the speaker and the content of the alleged representations, it contains no

facts as to when the statements were made, and only provides generalized statements as to where the representations were made … and how the [p]laintiff relied upon them." *Id.*

Plaintiffs' claims fail for this same reason. Plaintiffs do not identify the "advertisements and marketing materials" on which their claims are based such that Metronet can adequately respond to the claim that these materials did not disclose the TAF. Instead, Plaintiffs each dance around the issue by vaguely alleging how they were "first exposed" to Metronet's purported representations but carefully avoid identifying the advertisements and marketing materials that they claim to have relied on when signing up for Metronet internet service. The failure to comply with Rule 9(b) is particularly problematic here where Plaintiffs' entire claim is based on whether or not the TAF was disclosed. How can Metronet be expected to respond to a claim based on the alleged absence of a disclosure of the TAF when Plaintiffs have not identified the "advertisements and marketing materials" where the alleged failure to disclose took place?

Additionally, the lone example that describes and depicts specific Metronet advertisements is contained in Paragraphs 17-18. As described above, Plaintiffs misleadingly omit the portion of the advertisements that discloses that the listed price does not include taxes and fees, including the TAF. Metronet should have the opportunity to make this same showing based on whatever advertising and/or marketing materials on which Plaintiffs base their claims. Plaintiffs' current pleading deprives Metronet of this opportunity.

Minnesota and Kentucky also apply the same heightened pleading requirements for claims under their respective consumer fraud statutes. *See Masterson Personnel, Inc. v. The McClatchy Co.*, No. 05-1274RHKJJG, 2005 WL 3132349, at *4-5 (D. Minn. Nov. 22, 2005) (dismissing claim where there were "no factual allegations discussing specifically what fraudulent actions were taken by [defendant], when these actions were taken, and how any actions played a part in the alleged misconduct by the third-party publishing company" thereby failing to "appraise [defendant] of the

claims against [it] and the acts relied upon as constituting the fraud charged"); *Ikechi v. Verizon Wireless*, No. 10-cv-4554, 2011 WL 2118797, at *4 (D. Minn. Apr. 7, 2011) (dismissing claim where Plaintiff had not identified "the written or oral communications upon which [plaintiff's] claim" was based because general assertions of representations and assertions were too indefinite and imprecise to satisfy Rule 9(b)); *Nunez v. Best Buy Co., Inc.*, 315 F.R.D. 245, 248-49 (D. Minn. 2016) (dismissing claim where plaintiff did "not specify whether [plaintiff] relied upon…a price tag in a store, a paper flyer, an e-mail, or a price listed on [defendant's] website" because specific pleading was necessary to "put defendant on notice of the alleged underlying fraudulent conduct which plaintiff's complaint is based"); *Kennedy v. Prime Hydration*, No. 3:23-cv-00476-GNS, 2024 WL 3826529, at *2 (W.D. Ky. Aug. 14, 2024) (citing cases).

For this reason alone, Plaintiffs have failed to meet the heightened pleading standard of Rule 9(b), and their fraud-based claims must be dismissed.

**B.      Murray's Indiana-Law Claim Is Barred by the Statute of Limitations.**

The IDCSA has a two-year statute of limitations. *See* Ind. Code § 24-5-0.5-5 ("[a]ny action brought under section 4(a)…of this chapter may not be brought more than two (2) years after the occurrence of the deceptive act"); *see also Carroll v. BMW of N.A.*, LLC, 553 F. Supp. 3d 588, 615-16 (S.D. Ind. 2021) (granting defendant's motion for summary judgment and finding that plaintiff's IDCSA claims are barred by the two-year statute of limitations).

Here, Plaintiff Murray signed up for Metronet internet service in March 2022.  (*See* Dkt No. 13-4.)  Murray claims that she did not discovery that a TAF was being charged "until she received her monthly bill reflecting the [TAF]."  That bill was dated March 28, 2022.  (*See* Dkt No. 13-6.)  Accordingly, no later than March 2022 Murray was aware she was being charged a TAF that she now claims was deceptive, which means to satisfy the statute of limitations she was required to bring her claim by March 2024.  She actually filed her complaint on August 2, 2024.

(Dkt No. 1.) Accordingly, she failed to file within the two-year statute of limitations, and her IDCSA claim must be dismissed.

### C. Plaintiffs' Claims Are Barred By the Voluntary Payment Doctrine.

The voluntary payment doctrine stands for the proposition that "a plaintiff who voluntarily pays money in reply to an incorrect or illegal claim of right cannot recover that payment unless [they] can show fraud, coercion, or mistake of fact." *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 666 (7th Cir. 2001) (applying Illinois law); *see also Time Warner Enter. Co., L.P. v. Whiteman*, 802 N.E.2d 886, 890 (Ind. 2004) ("[g]enerally a voluntary payment made under mistake or in ignorance of the law, but with a full knowledge of all the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recovered back"); *Minn. Pipe and Equipment Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 874-75 (D. Minn. 2013) ("[t]he voluntary payment doctrine provides that one who has knowledge of the material facts and makes a payment voluntarily cannot later recover it on the ground he or she was under no legal obligation to make the payment in the first place"); *Joannin v. Ogilvie*, 52 N.W. 217, 217 (Minn. 1892) ("[t]he rule is that money paid voluntarily, with full knowledge of the facts, cannot be recovered back. If a [person] chooses to give away [their] money, or to take [their] chances whether [they] are giving it away or not, [they] cannot afterwards change [their] mind; but it is open to [them] to show that [they] supposed the facts to be otherwise, or that [they] really had no choice"); *Gratz v. Redd*, 1843 WL 3535, at *11 (Ky. Ct. App. 1843) ("where money has been paid under a clear and palpable mistake of either law or fact, or both, essentially bearing upon and affecting or superinducing the payment, without cause or consideration, and which in law, honor and conscience, was not due and payable, and which in honor, morality and good conscience, ought not to be retained, it may be recovered back"); *City of Covington v. Powell*, 1859 WL 5581, at *1 (Ky. Ct. App. 1859)

10

("[m]oney voluntarily paid by one who knows [they are] not bound to pay, cannot be recovered back.").

Here, Murray signed up for Metronet internet service in March 2022 and alleges that she discovered the TAF charge when she received her first monthly bill. (Cmplt ¶¶29, 34.) After receipt of her first monthly bill, Plaintiff Murray has continued to pay for Metronet's services ***for over two years*** despite knowing of Metronet's TAF charge, and acknowledging that she had other internet service providers she could have used. (Cmplt ¶37.)

Similarly, Perry signed up for Metronet internet service in April 2024. Cmplt ¶38. He alleges he learned of the TAF when "he signed up with Metronet over the phone and called to set up installation." Cmplt ¶43. Thus, by his own allegation, Perry was made aware of the TAF before completing his order and scheduling installation and nevertheless still chose to proceed. And, he has continued to pay the TAF charge voluntarily to this day, even though he acknowledges that he has other internet options.

For this reason, too, Metronet respectfully requests this Court dismiss each of Plaintiffs' claims in their entirety.

**D.  Murray Cannot Bring a Claim Under Kentucky Law, and Perry Cannot Bring a Claim Under Minnesota Law.**

Murray (a Minnesota resident) purports to bring claims under Indiana, Minnesota, and Kentucky law. Perry (a Kentucky resident) purports to bring claims under Indiana, Kentucky, and Minnesota law. Plaintiffs' claims under state consumer fraud statutes where they are not a resident – Kentucky for Murray, and Minnesota for Perry – and where a defendant does not have its principal place of business defy basic principles of law and common sense, and should be dismissed.

Generally, courts have determined that state consumer protection statutes do not apply extraterritorially when there is no connection between the parties' conduct and the state whose law was allegedly violated. *See, e.g., Johannessohn v. Polaris Ind., Inc.*, 450 F. Supp. 3d 931, 961-966 (D. Minn. 2020) ("[i]n general, there is a presumption against the extra-territorial application of a state's statute") (citation omitted); *Agrolipetsk, LLC v. Mycogen Seeds*, No. 1:16-cv-03414-SED-MPB, 2017 WL 7371191, at *4-5 (S.D. Ind. June 5, 2017) (requiring a nexus between the complained-of conduct and the state whose law is being alleged to have been violated); *see generally Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 961 (E.D. Ky. 2019) ("[t]he KCPA was enacted 'to give Kentucky consumers the broadest possible protection for allegedly illegal acts.'") (citing *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988)).

Murray cannot state a claim under Kentucky law because her purported claim has no nexus with Kentucky. Murray alleges she is a citizen and resident of Minnesota, and that she "signed up for the Fiber-Speed Internet Service with Metronet for her home located in Rochester, Minnesota" after being exposed to Metronet's alleged misrepresentations sent to her via "mailing flyers sent to her apartment [in Rochester, Minnesota] and on billboards located throughout Rochester," Minnesota. (Cmplt ¶¶11, 29 31.) The Complaint is devoid of any allegations that suggests Murray's claims arise out of her contacts with the State of Kentucky. Accordingly, to the extent Murray is attempting to bring claims under Kentucky law, her claims must be dismissed.

Similarly, Perry has no contacts with Minnesota. He alleges that he is a citizen of Kentucky, and that he "signed up for the Fiber-Speed Internet Service with Metronet for his home located in Lexington, Kentucky" after being exposed to Metronet's alleged misrepresentations via an online promotion. (Cmplt ¶¶11, 38, 40). There is nothing in the Complaint that even suggests

that his claim arises out of any contacts with the State of Minnesota. Thus, to the extent Perry is attempting to bring claims under Minnesota law, his claims must be dismissed.

### E.    Plaintiffs Fail To State an Unjust Enrichment Claim.

When neither party disputes the existence of a contract, "an unjust enrichment claim will seldom survive a motion to dismiss." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 887. Plaintiffs may plead "(1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is not an express contract, then the defendant is liable for unjustly enriching [itself] at [plaintiff's] expense." *Gibson v. Eagle Family Foods Grp, LLC*, No. 1:22-cv-02147-TWP-MKK, 2023 WL 5574625, at *11 (S.D. Ind. Aug. 29, 2023); *see also Mashallah, Inc. v. West Bend Mutual Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) ("[a] claim for unjust enrichment is based upon an implied contract; where there is a specific contract that governs the relationship of the parties, that doctrine has no application"). "If an express contract exists to govern the parties' conduct, then there is no room for an implied contract." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 616 (7th Cir. 2013).

Here, both Plaintiffs signed up for Metronet's internet service, and in doing so, both Plaintiffs agreed to Metronet's Terms and Conditions, creating an express agreement between Metronet and each Plaintiff. Accordingly, Plaintiffs cannot assert an unjust enrichment claim. Accordingly, Count V should be dismissed.

## II.    PLAINTIFFS' REFERENCES TO ANONYMOUS COMPLAINTS MUST BE STRICKEN.

Under Federal Rule of Civil Procedure 12(f), courts "may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." "[W]here a motion to strike removes unnecessary clutter from the case, it serves to expedite, not delay." *Hardin v. Am. Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999). "Prejudice occurs when the challenged pleading or

allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id.* (citation omitted).

Here, Plaintiffs cite to seven anonymous "reviews" on various online platforms related to Metronet's alleged misrepresentations. Cmplt ¶47. These reviews are posted anonymously, ostensibly by non-parties. Neither Metronet nor the fact-finder will be able to determine whether these non-parties are actual consumers of Metronet, or whether the claims have any validity. Further, because the claims are anonymous and therefore unverifiable, Metronet will have no ability to confront the individuals who authored the "reviews," making the reviews themselves inadmissible hearsay.

Even if Plaintiffs' claims survive the Motion to Dismiss (which they should not), there is no reason to clutter this case with immaterial and scandalous allegations that will have zero impact on Plaintiffs' claims. Accordingly, Metronet respectfully requests that this Court strike Paragraph 47 from the Complaint.

## CONCLUSION

For the reasons set forth above, Metronet respectfully requests that this Court grant Metronet's Motion to Dismiss. Alternatively, Metronet requests that this Court strike Paragraph 47 from the Complaint.

Dated: September 23, 2024

Respectfully submitted,

By: /s/ Scott T. Schutte
    Scott T. Schutte
    Spenser B. Jaenichen (*pro hac vice forthcoming*)
    **MORGAN, LEWIS & BOCKIUS LLP**
    110 North Wacker Drive, Suite 2800
    Chicago, IL 60606-1511
    Phone: 312.324.1000/Fax: 312.324.1001
    scott.schutte@morganlewis.com
    spenser.jaenichen@morganlewis.com

    *Counsel for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I, Scott T. Schutte, an attorney, certify that I filed the foregoing using the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record on this 23rd day of September, 2024.


<u>s/ *Scott T. Schutte*</u>
Scott T. Schutte