UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JYOTI GAUTAM MURRAY and ALLEN PERRY, on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No. 3:24-cv-00131-MPPB-CSW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| METRO FIBERNET, LLC d/b/a METRONET, | ) ) ) | |
| Defendant(s). | ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STRIKE CERTAIN ALLEGATIONS IN THE COMPLAINT

Plaintiffs, on behalf of themselves and all similarly situated consumers, bring this lawsuit challenging Metronet's deceptive bait-and-switch advertising of its Fiber-Speed Internet Service (the "Internet Service"). Plaintiffs allege that Metronet misleads consumers by prominently advertising sham low prices for its Internet Service through various marketing channels—including on its website, in online promotions, mailing flyers, and billboards—and then covertly tacking on a mandatory Technology Services Fee ("TSF") on consumers' bills that steeply inflates the true cost of Metronet's Internet Service ***by up to 40%***. *See generally,* Dkt. No. 1, Class Action Complaint ("Compl.") ¶¶ 15-16; 23-25. As such, Metronet's price advertisements are false. Metronet's Internet Service does not cost $29.95 (as advertised to Plaintiff Perry) or $49.95 (as advertised to Plaintiff Murray). Instead, the true cost of Metronet's Internet Service is actually the advertised low-price *plus* the mandatory TSF. *Id.* ¶ 23.

Metronet's TSF is a monthly flat fee purportedly used to "cover any service calls or repairs to all Metronet-owned equipment" and "is automatically included on each bill and cannot be

1

waived." *Id.* ¶ 21. Plaintiffs allege Metronet's TSF is nothing more than a "junk fee" because all customers are required to pay the TSF, regardless of whether their technology ever needs servicing or whether they ever make any service-related calls to Metronet (Plaintiffs, for example, never made any service-related calls). *Id.* ¶¶ 23, 25.

In recognition of the potential for deception, the Federal Trade Commission has recently banned this advertising practice. Specifically, the FTC has cautioned against "misleading door openers," calling such price advertisements "deceptive":

> [I]nternet service providers routinely do not include internet service fees, such as installation and activation fees, equipment fees, penalties for exceeding data caps, and early termination fees, in advertised prices, ***and that these fees should be considered as part of the true monthly cost of internet service that should be incorporated into advertised prices*** or prohibited when they are arbitrary or do not reflect added value.

*Trade Regulation Rule on Unfair or Deceptive Fees,* 88 Fed. Reg. 77420, 77432 (proposed Nov. 9, 2023) (to be codified at 16 C.F.R. § 464) (emphasis added).

For years, however, Metronet's deception went unabated. By unfairly obscuring the true cost of its Internet Service in its advertisements, Metronet impedes consumers' ability to engage in fair price comparisons in the marketplace and have enticed consumers to switch internet service providers when they otherwise would not have. *Id.* ¶¶ 4, 26.

Metronet's Motion to Dismiss is limited. Specifically, Metronet complains Plaintiffs do not satisfy 9(b) because they do not attach the specific advertisements each relied on when signing up for the Internet Service. But the law does not require perfect recordkeeping from Plaintiffs. Plaintiffs each allege they relied on Metronet's price advertisements, which did not include the later-added TSF. This is sufficient to put Metronet on notice of the basis of Plaintiffs' claims.

Next, Metronet complains that Plaintiff Murray's Indiana consumer protection act claim is time-barred. Metronet concedes, however, that Plaintiff Perry may bring the claim. With respect

2

to Plaintiff Murray, this claim survives the pleadings stage, given that Plaintiff Murray has paid TSFs within the past two years.

Metronet also argues the voluntary payment doctrine bars Plaintiffs' claims. The doctrine has no applicability in cases of fraud, however. In any event, this is an affirmative defense that should not be decided on the pleadings.

Metronet also complains Plaintiffs' unjust enrichment claim is improper. But at this nascent stage of the proceedings, Plaintiffs have adequately alleged that their payment of a fee—for which they never received anything in return—was unjust.

Finally, Metronet moves to strike the other online consumer complaints cited in Plaintiffs' Complaint. There is no reason for the Court to do so. The question for the Court is not whether these complaints are admissible as evidence. Instead, the question is whether they are potentially relevant to Plaintiffs' claims. Because these complaints are germane to Plaintiffs' allegation that Metronet's conduct has caused widespread harm, they should not be stricken.

The Motion should be denied.

## LEGAL STANDARD

*Rule 12(b)(6)* Standard

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp*). "[A] facially plausible claim is one that allows 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* A complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 586 (7th Cir. 202), "but not need supply the specifics required at the summary judgment stage." *Graham v. Bd. Of*

*Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true[.]" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

*Rule 12(f)* Standard

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In general, motions to strike are disfavored because they "potentially serve only to delay" the proceedings. *Heller Fin., Inc. v. Midwhey Power Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The party moving to strike a pleading under Rule 12(f) has "the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Kesterke v. BCD White Inc.*, 2018 U.S. Dist. LEXIS 113059, *2 (N.D. Ind. July 9, 2018).

## DEFENDANT'S MOTION TO DISMISS MUST BE DENIED

### I. Plaintiffs' Consumer Protection Claims are Plead with Particularity

Metronet moves to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 9(b), arguing Plaintiffs fail to plead their fraud-based claims with the requisite specificity. But Plaintiffs identify Metronet's misrepresentations and omissions in sufficient detail so as to give Metronet notice of the particular fraudulent misconduct, which is all that is required by Rule 9(b) at this early stage in the litigation.

In the Seventh Circuit, consumer protection claims sounding in fraud must comply with the heightened pleading requirements set forth in Rule 9(b). Fed. R. Civ. P. 9(b); *Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 738 (7th Cir. 2019) (citing *Camasta v. Jos. A. Bank Clothiers,*

*Inc.,* 761 F.3d 732, 737 (7th Cir. 2014)).[1] This standard requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Critically, this "particularity requirement relaxes when a plaintiff 'lacks access to all facts necessary to detail [her] claim.'" *Moore v. Soc. Coaching-Credit Repair, LLC,* 2024 WL 1929431, at *2 (N.D. Ind. May 1, 2024) (quoting *Corley v. Rosewood Care Ctr.,* 142 F.3d 1041, 1051 (7th Cir. 1998)). At bottom, the purpose of Rule 9(b) "is to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Inv. Servs., Inc.,* 191 F.3d 777, 783 (7th Cir. 1999); *see also Cleveland v. Whirlpool Corp.,* 550 F. Supp. 3d 660, 673-74 (D. Minn. 2021) ("The primary purpose of this particularity requirement is to enable a defendant to respond and to prepare a defense to the fraud claim."). A complaint generally satisfies Rule 9(b) by alleging the "who, what, when, where, and how" of the defendant's misconduct. *Vanzant,* 934 F.3d at 738. Plaintiffs' well-pled allegations more than meet this standard.

Specifically, Plaintiffs allege Metronet uniformly and prominently advertises an artificially low price for its Internet Service (that does *not* include the TSF), enticing consumers to switch internet service providers based on the low-advertised price. Compl. ¶ 25. But Metronet's price representations are deceptive and misleading because Metronet adds a mandatory TSF *to every customer's account,* such that the true cost of its Internet Service is *not* the flat, low-price as advertised, but rather, the advertised flat, low-price *plus* the mandatory TSF, which has ranged from $9.95 to $12.95 per month over time—***up to 40%*** of the advertised price for internet. *Id.* ¶

---

[1] *See Barker v. Kapsch Trafficcom USA, Inc.,* 2020 WL 2832092 (S.D. Ind. June 1, 2020) (as to Indiana's Deceptive Consumer Sales Act ("IDCSA")); *Cleveland,* 550 F. Supp. 3d at 674 (as to Minnesota's Consumer Fraud Act ("MCFA")); *Ali v. Allstate Northbrook Indemnity, Co.,* 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024) (as to Kentucky's Consumer Protection Act ("KCPA")).

19-20, 23. Indeed, the TSF is a typical "junk fee" that merely represents a component of the true cost of Metronet's Internet Service. *Id.* ¶ 23.

Why Metronet strategically chooses not to just advertise the cost of its Internet Service as the advertised low-price *plus* the TSF is simple: Metronet wants to catch consumers' attention in its marketing materials by advertising the lowest possible price, gain an unfair upper hand on competitors by obstructing consumers' ability to engage in true price comparisons, and then commit customers to a contract upon which they later learn that the cost of the Internet Service is actually higher than represented in its advertisements given the mandatory imposition of the TSF. *Id.* ¶¶ 4, 7, 26. This is a classic bait-and-switch.

The Seventh Circuit has recognized that similar bait-and-switch pricing schemes—when a retailer induces a sale by initially advertising an artificial "lower or partial price without disclosing the total cost"—are deceptive and misleading to reasonable consumers, "even when a consumer discovers the price discrepancy before completing a transaction." *See Kahn v. Walmart Inc.,* 107 F.4th 585, 601 (7th Cir. 2024) (reversing lower court's dismissal of consumer protection claims alleging that Walmart's advertised lower cost to consumers for goods and then inflated by mandatory charges at the register misled consumers even when they discovered higher price before completing transaction).[2]

Metronet argues Plaintiffs' allegations are insufficient because they fail to identify the specific "advertisements and marketing materials" that Plaintiffs relied upon when signing up.

---

[2] *See also Hall v. Marriott International, Inc.,* 2020 WL 4727069 at *8 (S.D. Cal. Aug. 14, 2020) (holding "Defendant's initial advertising of a low price not including the resort fee is what was deceptive" and even where resort fee was disclosed prior to the consumer finalizing a hotel reservation, such fee could be misleading where defendant represented that certain amenities are "complementary" but those amenities are actually encompassed within what the consumer pays for the resort fee).

Mot. at 8. But Metronet's argument misses the mark. Plaintiffs allege they each saw and relied on advertisements that did not include the TSF in the advertised price. Compl. ¶¶ 31-33, 40-42. Indeed, the Complaint sufficiently identifies Metronet's material misrepresentations and omissions to adequately put Metronet on notice of their claims. Plaintiffs allege they were both exposed to "Metronet's representations made in its advertisements and marketing materials regarding the low-price of Defendant's service." *Id.* ¶¶ 30, 39. In particular, Plaintiff Murray viewed Metronet's misrepresentations about the true cost of its Internet Service "via mailing flyers sent to her apartment rental address and on billboards throughout Rochester" that advertised the Internet Service as being "$49.95." *Id.* ¶¶ 30-32. As Plaintiff Perry encountered Metronet's misrepresentations about the true cost of its Internet Service "via an online promotion" advertising the cost as "$29.95." *Id.* ¶¶ 39-41. Based on Metronet's misrepresentations in these marketing materials and advertisements, Plaintiffs chose to sign up for Metronet's Internet Service based upon the belief that the true cost of the Internet Service was the low-cost as advertised, *i.e.,* "$49.95" and "$29.95"—*not* the low-cost *plus* the mandatory TSF. *See id.* ¶¶ 36, 45.

These allegations are sufficiently detailed to put Metronet on notice of their fraudulent conduct and surpasses the heightened pleading standard. *See e.g., Moore,* 2024 WL 1929431 at *3 (finding IDCFA claim sufficient where plaintiff alleged misrepresentations made on telephone with defendant's representative pled with particularity where it described "the nature and content of each misrepresentation, even if not precisely quoted"); *Rubio v. Polaris,* 2022 WL 13909757 (S.D. Ind. Oct. 24, 2022) (allegations were pled "with enough particularity under Rule 9(b) to give Defendant's adequate notice of their claim" where they alleged they saw "advertising online" while making an "on-line rental purchase" of a UTV that was advertised as "safe" when it was not); *Cleveland,* 550 F. Supp. 3d at 674-75 (plaintiff pled MCFA claim with particularity where she

alleged Whirlpool misrepresented that its dishwashers required fewer repairs than its competitors "on its website, in marketing materials, in warranties, in user manuals, on the labeling of the packaging of the Dishwashers, through employees, and through authorized retailers. Such allegations, although broad, establish 'where' the allegedly fraudulent statements occurred"); *Ali,* 2024 WL 1199023 at *4 (allegations satisfied Rule 9(b) for KCPA claim where plaintiff "identified the Allstate VIN" as the misrepresentation itself because it was from a stolen vehicle and that she viewed the VIN online and the car's salvage certificate).

Metronet heavily relies on *Lyons v. Leatt Corp.,* No. 4:15-CV-17-TLS, 2015 WL 7016469 at *3-4 (N.D. Ind. Nov. 10, 2015) for the contraposition. But *Lyons* concerned a products liability action where the plaintiff identified an extensive list of very specific misrepresentations pertaining to the safety of a motocross brace, *i.e.,* "that the brace would protect a rider from spinal cord injury," and "had certain medical expertise and other professional endorsement(s) behind its design and safety", and ultimately failed to plead facts as to when and where those statements were made. Here, however, Plaintiffs allege the misrepresentation itself is simply Metronet's advertised price for its Internet Service, which deceptively excludes the mandatory TSF from the total price, such that it is not as critical for Defendant to know precisely which "online promotion, mailing flyer, or billboard" Plaintiffs found the misrepresentation because Plaintiffs allege the deceptive message itself (the advertised price of the Internet Service) is uniform across all of Metronet's marketing channels. *See* Compl. ¶ 16. Thus, *Lyons* is factually distinguishable.[3] Metronet's Motion should be denied.

---

[3] Metronet's additional authorities are inapposite. In *Shea v. General Motors LLC,* 567 F. Supp. 3d 1011 (N.D. Ind. Oct. 14, 2021), the underlying fraud concerned a vehicle's excessive oil consumption defect. Although the vehicle buyers alleged GM misrepresented its vehicles in marketing materials, the court ultimately dismissed the IDCSA claim for lack of pleading *reliance*

8

II. **Plaintiff Murray's Indiana-Law Claim Falls Within the Statute of Limitations**

Metronet next argues that Plaintiff Murray's claim is barred by Indiana's statute of limitations.[4] Metronet is correct that the IDCSA has a two-year statute of limitations. Ind. Code § 24-5-0.5-5. However, Metronet is wrong that Plaintiff Murray did not file this lawsuit within that limitations period. According to Metronet, Plaintiff Murray was required to file this lawsuit two years from the date that she was "aware she was being charged a TAF." Mot at 9. As an initial matter, the date Plaintiff "became aware" she was charged a TAF is not alleged in the Complaint and is the appropriate subject of discovery. *See, e.g., Vasquez v. Indiana Univ. Health, Inc.,* 40 F.4.th 582, 588 (in discussing when a Plaintiff "discovered" the injury: "[W]ithout discovery, choosing among these alternatives is difficult, if not impossible. What matters is that the complaint presents a plausible account under which suit is timely. We note as well that timeliness is an affirmative defense and thus normally (and here) is not properly resolved at the Rule 12(b)(6) stage"); *New City Auto Grp., Inc. v. O'Rourke,* 2024 U.S. Dist. LEXIS 129583, *13 (denying a motion to dismiss where "the pleadings in [the] case [did] not establish exactly when [Plaintiff] learned about the alleged [injury]" and that "[D]epending on how discovery shakes out, this might

---

because the "owners never sufficiently allege they relied on these materials in making their purchases." *Id.* at 1024. To the contrary, Plaintiffs here both allege they relied on the artificially inflated price of Defendant's Internet Service as advertised in choosing to sign up with Metronet as opposed to other providers. *See* Compl. ¶¶ 32, 41. In *Kennedy v. Prime Hydration, LLC,* No. 3:23-CV-00476-GNS, 2024 WL 3826529, *3 (W.D. Ky. Aug. 14, 2024), the court held plaintiffs' allegations that refer to "Defendants collectively and do not explain the misrepresentations or omissions allegedly attributable to any of them specifically" was "plainly insufficient to meet Rule 9(b)'s requirements." The plaintiffs in *Masterson Personnel, Inc. v. The McClatchy Co.,* No. Civ. 05-1274 RHKJJG, 2005 WL 3132349, *5 (D. Minn. Nov. 22, 2005) similarly sought to group the defendants together by alleging the parent company's liability through the conduct of its subsidiary without asserting any facts of the parent company's involvement. Here, however, there is no lumping of bad actors alleged in Plaintiffs' Complaint.

[4] Plaintiff Perry also brings a claim under the IDCSA, which Metronet concedes is timely. Thus, this claim will survive regardless.

be something more appropriate for the summary judgment stage of the case, but it certainly is not a winning argument on a motion to dismiss.").

But in any event, Metronet's legal standard is incorrect because Metronet's misconduct is ongoing. The continuing violation doctrine sets a new accrual date each time a defendant violates the law. *Smith v. Brown,* 2021 U.S. Dist. LEXIS 11187, *5 ("[F]or a continuing harm, the statute of limitations begins to run on the last occurrence of the harm."). The doctrine applies when a plaintiff suffers harm due to a defendant's repeated violations. *Id.; Wright v. Wynn,* 2020 U.S. Dist. LEXIS 165573, *1. Here, Metronet admits that it continues to improperly charge Plaintiff Murray TSF fees to this day. *See* Mot. at 6, 11. Plaintiff Murray's injury is therefore ongoing, and Plaintiff Murray alleges as such. Compl. ¶¶ 47, 71. The claim is not time-barred. *Id.; Smith,* 2021 U.S. Dist. LEXIS 1187, *5; *Wright,* 2020 U.S. Dist LEXIS 165573, *1. The Motion fails.

### III.     The Voluntary Payment Doctrine Has No Application Here

Metronet next argues that each of Plaintiffs' claims are barred pursuant to the voluntary payment doctrine because Plaintiffs supposedly continued to pay the TSF even after they were made aware of it. Mot. at 11. This affirmative defense fails.

First, the voluntary payment doctrine does not apply "where the payee was induced by fraud or improper conduct." *Lawson v. First Union Mortgage Co.,* 786 N.E. 2d 279, 284 (Ind. App. 2003) (voluntary payment doctrine did not apply where plaintiff paid a documentation fee for her mortgage "without questioning [ ] the fee's validity" and fee was prohibited by the IDCSA); *see e.g., O'Flynn v. PHH Morg. Corp (In re O'Flynn),* 654 B.R. 296 (Bankr. S.D. Ind. 2023) (exception applied where "Ocwen engaged in fraudulent or improper conduct in requesting payment" in connection with bankruptcy services). Kentucky law holds similarly. *See Helton v. Am. General Life Ins. Co.,* 946 F. Supp. 2d 695, 713 (W.D. Ky. 2013) (stating "a party cannot . . . recover money

voluntarily paid with a full knowledge of all the facts, and ***without any fraud***, . . .") (citations omitted) (emphasis added). Minnesota courts also agree. *See McBrady v. Monarch Elevator Co.,* 113 Minn. 104, 106 ("[T]his was not a voluntary payment. A payment induced by the fraud of the payee may be recovered."). Here, Plaintiffs allege Metronet induced Plaintiffs to pay the TSF through an improper bait-and-switch scheme. In light of this deception, the doctrine categorically does not apply.

Second, Indiana refuses to apply the voluntary payment doctrine to these types of consumer complaints like Plaintiffs' against Metronet "as a matter of policy" on the grounds "that it is [not] appropriate . . . to favor a private enterprise over private individuals in this respect." *Time Warner,* 802 N.E. 2d at 892-93. In *Time Warner,* the Indiana Supreme Court refused to find that the voluntary payment doctrine barred cable subscribers' claims to recover monthly late fees that allegedly exceeded the actual damage incurred by the provider. Amongst noted policy considerations, the court observed that if it were to credit the doctrine, then consumers would be left without recourse to challenge improper fees:

> Why should a customer protest the payment of a fee if it has no reason at the time of payment to believe that it is unreasonable and/or unconscionable? If that is the law, then all payees of all late fees pursuant to prior agreements regarding late fee payments, whether to banks, credit cards, bills for services, and the like, must automatically protest at the time of payment or lose the right to contest it. That is, of course, absurd.

*Id.* at 892 (citations and quotation marks omitted).

The same analysis applies here. If customers were required to challenge all improper fees at the same of payment or lose the right to sue over them, then all consumers would be barred from recovery. "That is, of course, absurd." *Id.*

Third, the fact that Plaintiffs continued to pay the TSF despite any awareness of that fee is inconsequential because they were contractually required to pay the TSF or otherwise would have

11

lost their internet service. Both Minnesota and Indiana recognize this exception. *See e.g., Minnesota Pipe and Equipment Co. v. Cameron Intern. Corp.,* 938 F. Supp. 2d 862 (D. Minn. 2013) (voluntary payment doctrine did not apply where plaintiff "was under a legal obligation to pay"); *Time Warner,* 802 N.E. 2d at 891 (holding similarly where cable subscribers were required to pay in order to continue receiving cable services); *City of Jeff v. Hall. at Jeff., L.P.,* 937 N.E.2d 402 (Ind. Ct. App. 2010) (same where "Hallmark was put in the position of having to make a payment in order to receive service" and "the City would not have approved Hallmark's application for access to the sewer system unless Hallmark paid the sewer tap fee").

Finally, the applicability of this affirmative defense is a fact issue. As numerous courts have recognized, determining whether the voluntary payment doctrine applies "is better left to consideration on the merits, not this pleading stage." *In re O'Flynn,* 654 B.R. at 334; *see e.g., Lott v. Louisville Metro Government,* No. 3:19-cv-271-RGJ, 2021 WL 1031008, at *6-7 (W.D. Ky. Mar. 17, 2021) (denying summary judgment on basis of voluntary payment doctrine where there was "a genuine issue of material fact about whether Plaintiff had 'full knowledge of all the facts which render the demand illegal' when he paid his fees."); *Helton,* 946 F. Supp. 2d at 713-14 (holding similarly at summary judgment stage).

## IV.  Plaintiffs State an Unjust Enrichment Claim

Metronet's argument on unjust enrichment also misses the mark and ignores the well pleaded facts of the Complaint. Plaintiffs allege that they paid a fee and received nothing in return. Specifically, Plaintiffs allege the TSF was to "cover any service calls or repairs to all Metronet-owned equipment." *Id.* ¶ 21. But neither Plaintiff made any service calls nor received any repairs to their Metronet-owned equipment. Compl. ¶¶ 35, 44. When a plaintiff pays a fee and receives nothing of value in return, this is a textbook example of unjust enrichment. See generally

*Coppolillo v. Cort,* 947 N.E.2d 994, 997 (Ind. Ct. App. 2011) ("To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.").

Metronet summarily argues that Plaintiffs' unjust enrichment fails because "[P]laintiffs signed up for Metronet's internet service, and in doing so, both Plaintiffs agreed to Metronet's Terms and Conditions, creating an express agreement between Metronet and each Plaintiff." Mot. at 18. However, there is nothing in the Complaint whatsoever that says anything about Metronet's Terms and Conditions or an "express agreement." Moreover, the existence of a contract does not necessarily bar an unjust enrichment claim under the circumstances when the plaintiff alleges a fee was paid and nothing of value was provided in return. *Coppolillo,* 947 N.E.2d at 998 (holding "the existence of a contract, in and of itself, does not preclude equitable relief which is not inconsistent with the contract."); *see also Celadon Trucking Servs., Inc. v. Wilmoth,* 70 N.E.3d 833, 845 (Ind. Ct. App. 2017) (affirming court's order granting summary judgment to the class on both the breach of contract claim and the unjust enrichment claim). Defendant's Motion therefore fails.

## V. The "Anonymous Complaints" Should Not Be Stricken

Metronet argues that the customer reviews in Paragraph 47 of the Complaint should be stricken because they are made by anonymous, non-party reviewers, and the claims are therefore unverifiable. But Metronet confuses the appropriate legal standard. These allegations need not be admissible as evidence. Instead, they demonstrate that Plaintiffs will be able to show in discovery that many other consumers felt deceived in the same way as Plaintiffs. Indeed, these are factual allegations related to Metronet's own practices and statements, which Metronet will have a chance

13

to address and refute in this case. Further, these reviews do not raise new claims against Metronet but are merely examples demonstrating that Plaintiffs' experiences are not outliers and that Metronet has knowledge or should have knowledge that its practice deceives consumers. In sum, Plaintiffs' allegations in Paragraph 47 are not so unrelated to their claims, prejudicial, or unworthy of consideration that the Court must strike them from the Complaint. Instead, Plaintiffs' allegations concerning online reviews of Metronet's services adds context to their claims. Through this allegation, Plaintiffs give context to their class allegations and their claims that this practice misleads the reasonable consumer.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Metronet's Motion to Dismiss in its entirety.

Dated: October 29, 2024

Respectfully submitted,

*/s/ Tyler B. Ewigleben*
Tyler B. Ewigleben, Bar No. 36450-49
Jennings PLLC
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (317) 695-1712
tyler@jenningspllc.com

Sophia G. Gold (*pro hac vice*)
KalielGold PLLC
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

*Attorney for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

       I certify that on October 29th, 2024, I electronically filed the foregoing with the Clerk of the Court, using the Electronic Filing System, which notifies all counsel of record.

                                     */s/ Tyler B. Ewigleben*
                                       Tyler B. Ewigleben