UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JYOTI GAUTAM MURRAY and ALLEN PERRY, on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

METRO FIBERNET, LLC d/b/a METRONET,

    Defendant.

No. 3:24-cv-00131-MPB-CSW

### METRONET'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, OR, IN THE ALTERNATIVE TO STRIKE CERTAIN ALLEGATIONS

Plaintiffs' Opposition to Metronet's Motion to Dismiss/Strike (Dkt Nos. 13 and 14) is as remarkable for what it does *not* contest as for what it does. Specifically:

- Plaintiffs – who freely acknowledge that they have not identified the advertisements on which they base their claims – do not challenge Metronet's contention that the "exemplar" advertisement referenced in the Complaint (at Paragraph 18) ***does***, in fact, disclose the Tech Assure Fee ("TAF") that is at the heart of Plaintiffs' claims. (*See* Mem. in Support, Dkt No. 14, at 2-3.) In other words, the only advertisement that Plaintiffs have put in front of this Court (an advertisement that Plaintiffs do not claim that they saw) belies Plaintiffs' claims.

- Plaintiffs do not challenge Metronet's assertion that each of them was made aware of the TAF by Metronet prior to the time they finalized their Metronet orders (much less had Metronet service installed). In other words, irrespective of what was or was not said in the advertisements at issue, after they were put on notice of the TAF Plaintiffs had an opportunity to choose internet service with another carrier but chose not to do so.

- Plaintiffs do not challenge Metronet's assertion that even after they became aware of the TAF, Plaintiffs continued to pay their Metronet bill (including the TAF) without protest, even though they each are on a month-to-month agreement and have other internet providers available to them.

1

Metronet respectfully submits that, against this factual backdrop, Plaintiffs' claims cannot survive this Motion to Dismiss. Accordingly, Metronet requests that this Court grant Metronet's Motion to Dismiss, with prejudice.

## ARGUMENT[1]

I. **PLAINTIFFS FAILED TO PLEAD FRAUD WITH THE PARTICULARITY REQUIRED BY RULE 9(B).**

Plaintiffs admit that they do not identify the specific advertisements on which their claims are based. As Metronet explained in its Memorandum (Dkt No. 14 at 6-9), Plaintiffs' failure to identify the advertisements that they claim to have seen and relied upon dooms all of Plaintiffs' claims under the heightened pleading requirement in Rule 9(b).

In response, Plaintiffs acknowledge that the heightened pleading standard applies (Dkt No. 21 at 4) but argue that they meet this standard by alleging generally that "Metronet uniformly and prominently advertises an artificially low price for its Internet Service (that does *not* include the [TAF]), enticing consumers to switch internet service providers based on the low-advertised price" (*id.* at 5) (emphasis original), and that Plaintiffs were "both exposed to 'Metronet's representations made in its advertisements and marketing materials regarding the low-price of [Metronet's] service'" (*id.* at 7.) This argument is belied by the allegations in Plaintiffs' complaint, common sense, and applicable case law.

As an initial matter – and although they fail to tell the Court as much in their Opposition – Plaintiffs have hedged every single one of their allegations about what advertisements they claim to have seen by making these allegations "upon information and belief." *See* Cmplt. ¶31 ("Upon

---

[1] Murray did not respond to Metronet's argument that she is unable to bring claims arising under Kentucky law, and therefore concedes the inadequacy of this cause of action. Murray's claims arising under Kentucky law should be dismissed. Perry did not respond to Metronet's argument that he is unable to bring claims arising under Minnesota law, and therefore concedes the inadequacy of this cause of action. Perry's claims under Minnesota law should be dismissed.

2

information and belief, Plaintiff [Murray] was exposed to [Metronet's] representations regarding its Fiber-Speed Internet Service via mailing flyers sent to her apartment rental address and on billboards located throughout Rochester."); Cmplt. ¶40 ("Upon information and belief, Plaintiff [Perry] was first exposed to [Metronet's] representations regarding its Fiber-Speed Internet Service via an online promotion.").  *See also* Cmplt. ¶16 ("Upon information and belief, Metronet advertises sham low-prices for its Internet Service to consumers through various marketing channels, including, but not limited to, its website, online promotions, mailing flyers, and billboards.").  In other words, not only have Plaintiffs failed to specifically identify the advertisements they claim to have seen, they hedge their generalized allegations by caveating them as being made "upon information and belief."

Nor have Plaintiffs provided this Court with a single exemplar of this allegedly "routine," "uniform," and "prominent" practice of making misrepresentations about pricing through "various marketing channels." (Cmplt. ¶¶ 1, 16, 17.)  If it were, in fact true, that Metronet had a "routine" and "uniform" practice across "various marketing channels" of misrepresenting the price of its internet services, one would think that Plaintiffs could have attached many exemplars to their Complaint.  They have not—because no such practice exists. Plaintiffs cannot muster even one example of this alleged "routine," "uniform," and "prominent" alleged deception—let alone one they actually saw or relied upon. Therefore, Plaintiffs' claims must be dismissed as a matter of law.

Indeed, in what should be the death knell of their hide-the-ball approach to pleading, the only exemplar that Plaintiffs did discuss in their complaint – an online advertisement that neither Plaintiff claims to have seen – *did* disclose the TAF.  As laid out in detail in Metronet's Memorandum (Dkt No. 14 at 2-3), the advertisement Plaintiffs cite to in Paragraphs 17 and 18 of the Complaint expressly tells consumers that "[t]he advertised price does not include applicable

3

taxes and fees (including installation fees and $12.95 per month Tech Assure fee)." (Dkt No. 14 at 2-3.)

Simply put, Plaintiffs have not put Metronet on adequate notice of their claims such that Metronet can meaningfully defend them. How exactly would Metronet defend against Plaintiffs' claims, as pled? By putting in front of this Court every single advertisement that ran during the class period – whether Plaintiffs claim to have seen them or not – and demonstrating that each disclosed the TAF? This is not how the federal pleading standard works, especially in a fraud case. If Plaintiffs can put a specific advertisement in front of this Court that they claim contains a misrepresentation, they are required to do so. Until and unless they do – and it is beyond dispute that they have not – their claims must be dismissed.

Plaintiffs do not find any refuge in the case law. Plaintiffs' cited cases (Opposition, Dkt No. 21 at 7-8), are inapposite because each alleges an affirmative misstatement – not, as alleged here, an omission. The difference here is that Plaintiffs can only sustain their fraud claims in this case by demonstrating that a particular advertisement (i) represented a price but (ii) did not disclose the TAF. Simply put, there is no way to defend against this claim without seeing the particular advertisements that Plaintiffs allegedly saw.

## II. PLAINTIFFS WERE AWARE OF THE TAF BEFORE ENTERING INTO A CONTRACT WITH METRONET.

In its Memorandum (Dkt No. 14 at 3-6), Metronet demonstrated that – irrespective of what statements were or were not contained in the advertisements that Plaintiffs allegedly saw – Plaintiffs were made aware of Metronet's TAF *prior* to entering into a month-to-month contract with Metronet. Metronet attached documents showing that in advance of the installation of Metronet services, each Plaintiff was sent a spec invoice that listed the TAF as a line item, and each also acknowledged and agreed to pay the TAF as part of the Terms of Service. (*Id.* at 4-6.) Although each Plaintiff had the opportunity after being told about the TAF to forego a business

4

relationship with Metronet and choose a different internet provider, Plaintiffs chose to proceed with Metronet and to voluntarily pay the TAF.

Against this factual background – again, which Plaintiffs do not dispute – Plaintiffs cannot plausibly state a claim that they were defrauded into entering into a business relationship with Metronet that gives rise to a consumer fraud claim. For this reason alone, Plaintiffs' entire complaint should be dismissed.

**III.    MURRAY'S CLAIMS UNDER THE INDIANA STATUTE ARE BARRED BY THE STATUTE OF LIMITATIONS.**

In its Memorandum, Metronet demonstrated that Murray's claims arising under Indiana law are barred by the two-year statute of limitations because she became aware of her claim when "she received her monthly bill reflecting the fee" on March 28, 2022, but did not file her lawsuit until August 2, 2024 – more than five months after the two-year statute of limitation expired. (*See* Dkt No. 14 at 9-10.)

Murray's first response is that "the date Plaintiff 'became aware' she was charged a TAF is not alleged in the Complaint and is the appropriate subject of discovery." (Dkt No. 21 at 9.) Not so. Murray expressly alleges that she discovered that she was being charged the TAF when she "received her monthly bill reflecting the fee." (Cmplt. ¶34.) Murray received her first bill reflecting the TAF on March 28, 2022. (Dkt No. 13-6 at 2.) Murray did not file her complaint until August 2, 2024, more than five months after the two-year statute of limitation expired.

Murray's second response – that under the "continuing harm doctrine" the statute of limitation accrues anew each time Metronet billed Murray for the TAF – is equally unavailing. Plaintiffs' only support for this assertion are claims brought under 42 U.S.C. §1983 by inmates for allegedly unconstitutional segregation. *See* Dkt No. 21 at 10, *citing Smith v. Brown*, 2021 U.S. Dist. LEXIS 11187, *5 (S.D. Ind. January 21, 2021) and *Wright v. Wynn*, 2020 U.S. Dist. LEXIS 165573, *1 (S.D. Ind. September 10, 2020). Plaintiffs do not cite a single case applying the

"continuing wrong" doctrine outside the context of Section 1983.[2] Put simply, Plaintiffs have no case law support for their novel approach to avoiding the statute of limitations in a consumer fraud setting.

### IV. PLAINTIFFS' CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE.

Plaintiffs do not dispute the following facts set out in Metronet's Memorandum (Dkt No. 14 at 3-6) that form the basis of Metronet's voluntary payment doctrine argument:

- Plaintiffs became aware of the TAF (at best) shortly after entering into their business relationship with Metronet;

- Plaintiffs are in month-to-month contractual arrangements with Metronet such that they could move to another internet provider at any time;

- Plaintiffs have other internet providers from whom they can obtain internet service; and

- Plaintiffs continued to voluntarily pay the TAF even after discovering its supposed illegality, and in fact continue to pay the TAF to this day, even after they filed their Complaint.

Under these facts, the voluntary payment doctrine applies unless Plaintiffs "can show fraud, coercion, or mistake of fact." *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 666 (7th Cir. 2001)

Plaintiffs do not argue coercion or mistake of fact. They do argue fraud, but this argument is baseless because Plaintiffs continued paying the TAF long after the alleged fraud was discovered. Whatever merit that argument would have in a situation where a plaintiff (allegedly because of fraud) does not realize the alleged illegality of a fee and/or had no option but to continue paying it, the so-called fraud exception does not apply here, where according to Plaintiffs' own

---

[2] Taken together with her argument that the voluntary payment doctrine does not apply, Murray is arguing in essence that she could voluntarily pay the TAF into perpetuity, fully aware of her claim that the TAF constitutes fraud, without a statute of limitations ever expiring because the TAF is charged every month. Simply put, that cannot be the law.

Complaint, Plaintiffs became aware of the TAF shortly after entering into a month-to-month contract with Metronet and had alternative internet providers they could have utilized. Indeed, the fact that Plaintiffs continue to use Metronet's internet service and pay the TAF *even after filing this suit* demonstrates the ludicrousness of this argument taken to its logical conclusion.

Plaintiffs' back-up argument based on *Time Warner Entertainment Co., L.P. v. Whiteman*, 802 N.E.2d 886 (Ind. 2004), which Plaintiffs read as an across-the-board holding that Indiana does not recognize the voluntary payment doctrine in consumer fraud cases. *Time Warner* is not nearly as sweeping as Plaintiffs read it to be. After an extensive discussion of Indiana law and decisions by other states on the voluntary payment doctrine, the Indiana Supreme Court decided not to apply the voluntary payment doctrine where (as it described the facts in *Time Warner*) "the customers allege that they were put in the position [of paying a late fee] in order to continue to receive cable service" because Time Warner had a "government created monopoly" and the plaintiffs had "nowhere else to go for cable services." *Id.* at 891, 892 (citations omitted). That is vastly different than the facts here, where Plaintiffs had other internet options and were in a month-to-month contract that allowed them to switch internet providers when they wanted.

Plaintiffs' reliance on the language in the extended quote at Page 11 of their Opposition also is misguided. In *Time Warner*, the court found "that at minimum there is a genuine issue of material fact as to whether [Time Warner] Customers voluntarily paid the late fees in the face of a recognized uncertainty as to the existence or extent of an obligation to Time Warner." *Id.* at 892. In that context, it made sense for the Indiana Supreme Court to credit the reasoning of a dissenting justice in another state to refuse to apply the voluntary payment doctrine if a customer "has no reason at the time of payment to believe that [a fee] is unreasonable and/or unconscionable." *Id.* But here – where Plaintiffs both believed the TAF was fraudulent as soon as they saw it because it contradicted the pricing they claim to have been promised (even if they cannot point to a specific

7

advertisement) and could have moved to another provider but instead paid the TAF month after month (including after they filed their Complaint!) – the reasoning in *Time Warner* does not apply.

### V. PLAINTIFFS' CONTRACT WITH METRONET PROHIBITS THEM FROM BRINGING UNJUST ENRICHMENT CLAIMS.

Metronet established in its Memorandum – and Plaintiffs do not dispute – that they have a month-to-month contract with Metronet governed by Metronet's Terms and Conditions. Because of this concession that there is a contract between the parties, Plaintiffs cannot bring an unjust enrichment claim against Metronet. *See Gociman v. Loyola Univ. of Chi.*, 41 F. 4th 873, 887 (7th Cir. 2022); *Gibson v. Eagle Family Foods Grp., LLC*, No. 1:22-cv-02147-TWP-MKK, 2023 WL 5574625, at *11 (S.D. Ind. Aug. 29, 2023); *Mashallah, Inc. v. West Bend Mutual Ins. Co.*, 20 F. 4th 311, 325 (7th Cir. 2021).

### VI. PLAINTIFFS' REFERENCES TO ANONYMOUS COMPLAINTS MUST BE STRICKEN.

In response to Metronet's argument that the anonymous, unverified complaints set out in Paragraph 47 of the Complaint must be stricken under Rule 12(f), Plaintiffs contend that the complaints should remain as Metronet "will have a chance to address and refute" them. Glaringly missing from Plaintiffs' argument is any description of how Metronet would go about responding to anonymous, unverified (and unverifiable) complaints. If this Complaint survives a motion to dismiss (which Metronet submits it should not) Plaintiffs may (or may not) be able to show through discovery that other Metronet customers also felt aggrieved by the charging of the TAF. But Plaintiffs cannot rely on anonymous complaints that neither Plaintiffs nor Metronet will be able to verify. These complaints should be stricken.

## **CONCLUSION**

For all these reasons, and for the reasons set forth in Metronet's Memorandum in Support (Dkt No. 14), Metronet respectfully requests that this Court grant Metronet's Motion to Dismiss, with prejudice. Alternatively, Metronet requests that this Court strike Paragraph 47 from the Complaint.

Dated: November 6, 2024                Respectfully submitted,

                                       By: */s/ Scott T. Schutte*
                                           Scott T. Schutte
                                           Spenser B. Jaenichen
                                           **MORGAN, LEWIS & BOCKIUS LLP**
                                           110 North Wacker Drive, Suite 2800
                                           Chicago, IL 60606-1511
                                           Phone: 312.324.1000/Fax: 312.324.1001
                                           scott.schutte@morganlewis.com
                                           spenser.jaenichen@morganlewis.com

                                           *Counsel for Defendant*

9

## **CERTIFICATE OF SERVICE**

I, Scott T. Schutte, an attorney, certify that I filed the foregoing using the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record on this 6th day of November, 2024.

*/s/ Scott T. Schutte*
Scott T. Schutte