UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JYOTI GAUTAM MURRAY on behalf of themselves and all others similarly situated, ALLEN PERRY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METRO FIBERNET, LLC d/b/a METRONET,<br><br>Defendant. | No. 3:24-cv-00131-MPB-CSW |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiffs Jyoti Gautam Murray and Allen Perry filed this putative class action lawsuit against Defendant Metro Fibernet, LLC d/b/a Metronet on August 2, 2024. Plaintiffs allege that they were victims of Metronet's routine bait-and-switch scheme of deceiving consumers with low-priced advertisements that did not accurately reflect the price of their internet services. Now before the Court is Metronet's Motion to Dismiss. (Docket No. 13). For the reasons that follow, that Motion (Docket No. 13) is **GRANTED in part and DENIED in part**.

I.  **Background**

Metronet is an Internet Service Provider ("ISP") that "offers an array of fiber internet plans ranging in price dependent on varying degrees of internet speed[.]" (Docket No. 1, Complaint, ("Compl.") at ECF p. 5). Plaintiffs allege that Metronet "advertises sham low-prices for its internet service to consumers through various marketing channels, including but not limited to, its website, online promotions, mailing flyers, and billboards." (*Id*.).

Metronet offers a variety of "best offers" on its website. (*Id*. at ECF p. 6). Among these "offers" is the "Lowest Price!" option for internet services, which, in some geographical regions,

is only $29.95 per month. (*Id*.). However, Metronet has added a monthly fee that it characterizes as "Technology Services Fee" ("TSF"), on top of its flat rate since 2019. (*Id*. at ECF pp. 6–7). The TSF has increased from $9.95 to $12.95. (*Id*. at ECF p. 7). Metronet's website states that the TSF "cover[s] any service calls or repairs to all Metronet-owned equipment" and "is reflected on [the customer's] invoice in the amount of up to $12.95 per month." (*Id*. at ECF p. 7) (internal quotations omitted). The website also instructs that the TSF is mandatory and cannot be waived. (*Id*.). Thus, customers are required to pay the monthly TSF regardless of whether their technology needs servicing. (*Id*. at ECF p. 8). Plaintiffs allege that Metronet does not "adequately advise [its] consumers in its marketing materials prior to signing up with Metronet that their Internet Service includes the mandatory monthly TSF." (*Id*.).

On or around August 28, 2022, Murray signed up for internet service through Metronet for her home in Rochester, Minnesota. (*Id*. at ECF p. 9). Murray was, "[u]pon information and belief," exposed to Metronet's representations regarding its prices via mail flyers sent to her apartment as well as billboards in Rochester. (*Id*.). Murray chose Metronet for internet services because its advertised price of $49.95 was "the best price she found after comparing the services offered by similar service providers[.]" (*Id*.). Murray did not learn of the TSF until she received her monthly bill. (*Id*. at ECF p. 11). Murray never made any service calls to Metronet. (*Id*.).

Perry signed up for internet services with Metronet for his home in Lexington, Kentucky, on or around April 2024. (*Id*.). Perry selected the promotional discounted price of $29.95 per month for the first twelve months of service. (*Id*.). "Upon information and belief," Perry was exposed to Metronet's representations regarding its prices via an online promotion. (*Id*.). Like Murray, Perry chose to establish internet services through Metronet because he believed he would be getting the best value. (*Id*.). Perry only learned about the TSF when he signed up with

2

Metronet over the phone and called to set up installation. (*Id*. at ECF p. 12). Perry never made any service calls to Metronet. (*Id*.).

## II. Legal Standard

Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi*., 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)).

When pleading a fraud claim, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi*., 927 F.2d 988, 992 (7th Cir. 1991). To satisfy the requirement of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc*., 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992)).

## III. Discussion

### A. Fraud Claims

#### 1. Particularity Requirement

Metronet raises a series of challenges to Plaintiffs' Complaint. Among these challenges is Plaintiffs' failure to state their fraud-based claims with sufficient particularity. Plaintiffs' Complaint cannot satisfy the heightened pleading standard under Rule 9(b), Metronet argues,

3

because they failed to identify the marketing materials Plaintiffs' claims are based on, and instead, repeatedly substitute particularized facts for vague allegations made "[u]pon information and belief[.]" (Compl. at ECF pp. 5, 6, 8, 10, 11). In response, Plaintiffs contend that they have sufficiently placed Metronet on notice of its particular fraudulent misconduct.

To begin, Metronet faults Plaintiffs for not identifying the specific fraudulent advertisements they viewed. But the Court is not convinced that Rule 9 requires identification of the *exact* advertisements as a prerequisite to stating a fraud claim. *See Rubio v. Polaris, Inc.*, No. 1:21-cv-3006, 2022 WL 13909757, at *4 (S.D. Ind. Oct. 24, 2022) (finding that a plaintiff stated a fraud claim when she alleged that she saw advertisements online, from her home in Illinois, "while making an 'on-line rental purchase," and relied on those advertisements when renting a dangerous machine which led to injury); *see also Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 674–75 (D. Minn. 2021) (concluding fraud claim was pleaded with particularity where the plaintiff alleged the defendant made fraudulent representations "on its website, in marketing materials, in warranties, in user manuals, on the labeling of the packaging of the Dishwashers, through employees, and through authorized retailers").

In practice, Rule 9(b) requires that a plaintiff pleading fraud must state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Here, Plaintiffs have stated the who: Metronet. (Compl. at ECF pp. 10, 11). They have also stated what: misleading advertisements for internet services that intentionally excluded mandatory monthly charges. (*Id*. at ECF pp. 10–12). As to the timing of Metronet's alleged misrepresentations, Murray was exposed to advertisements on or around August 28, 2022, and Perry was exposed to advertisements on or around April 2024.  (*Id*. at ECF pp. 10, 11). Facts elucidating the "where," however, are less precise.

4

As for Murray, she alleges that, "[u]pon information and belief," she was exposed to Metronet's misrepresentations via mailing flyers sent to her apartment and billboards in Rochester. (*Id*. at ECF p. 11). But "Rule 9(b)'s particularity requirement is not satisfied by allegations of fraud based on 'information and belief,' unless the facts are peculiarly within the adversary's knowledge." *Richter v. Corp. Fin. Assocs., LLC*, No. 1:06-cv-1623, 2007 WL 1164649, at *2 (S.D. Ind. Apr. 19, 2007) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992)). The facts here do not fit this exception, as there is no argument from Murray or indication in the Complaint that Metronet's misrepresentations "[were] inaccessible to [her][.]" *Uni*Quality, Inc.*, 974 F.2d at 924. In fact, the opposite is true—only Murray could know where she was exposed to Metronet's allegedly deceiving advertisements. *See United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana, Inc.*, 305 F. Supp. 3d 964, 978 (S.D. Ind. 2018) (complaint failed to state fraud claim with particularity where the plaintiff's allegations were made "upon information and belief" but plaintiff "c[ould not] plausibly claim to have lacked access" to such information).

Perry's allegations suffer from identical deficiencies. The Complaint alleges that "[u]pon information and belief," Perry was first exposed to Metronet's advertisements "via an online promotion." (Compl. at ECF p. 11). But again, only Perry could know where he was first exposed to Metronet's fraudulent advertisements. Since the place "where" the alleged fraud took place is within Murray and Perry's knowledge and control, it is perplexing that Plaintiffs presented their allegations "[u]pon information and belief." (Compl. at ECF pp. 5, 6, 8, 10, 11). The caveat to the general rule that a plaintiff cannot satisfy the particularity requirement of Rule(b) with allegations made "upon information and belief" does not apply here. *Pirelli*

*Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). Plaintiffs' claims are not stated with sufficient particularity under Rule 9(b).[1]

### 2. Statute of Limitations

Metronet also argues that the statute of limitations has run on Murray's Indiana Deceptive Consumer Sales Act ("IDCSA") claim. The parties acknowledge that the statute of limitations under the IDCSA is two years. Ind. Code § 24-5-0.5-5(b). According to Murray, she was not aware of the TSF "until she received her monthly bill reflecting the Fee." (Compl. at ECF p. 11). Taking the date of her first invoice, March 28, 2022, (Docket No. 13-6),[2] as the date on which her cause of action accrued, Metronet argues that Murray's claim is untimely, as the Complaint was not filed until August 2, 2024. (*See id*. at ECF p. 27). In response, Plaintiffs argue that the continuous violation doctrine extended the statute of limitations period, making Murray's claim timely.

"A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses[;] [b]ut when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). Where, as here, a plaintiff argues that the continuing violation doctrine extends the limitations period, they "must

---

[1] Metronet argues that Murray and Perry have attempted to bring claims under state consumer fraud statutes where they are not residents. (Docket No. 14 at ECF p. 16). Plaintiffs do not respond to this argument. If they file an Amended Complaint, Plaintiffs are cautioned that, to raise a claim under Kentucky, Minnesota, or Indiana law, their allegations must create a "nexus connecting the alleged wrongful conduct" to the state whose laws they are invoking. *Agrolipetsk, LLC v. Mycogen Seeds*, No. 1:16-cv-3414, 2017 WL 7371191, at *5 (S.D. Ind. June 5, 2017).
[2] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiffs['] complaint and are central to [their] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Plaintiff refers to her bill in her Complaint, (Compl. at ECF p. 11), and it is central to her claim as it prompted her discovery of the TSF. (*Id*.).

demonstrate that the alleged injury-producing conduct was of a continuous nature." *Yoost v. Zalcberg*, 925 N.E.2d 763, 771 (Ind. Ct. App. 2010) (quoting *Palmer v. Gorecki*, 844 N.E.2d 149, 156 (Ind. Ct. App. 2006)).

In their response brief, Plaintiffs admit that Murray has remained a Metronet customer "to this day." (Docket No. 21 at ECF p. 10). According to Plaintiffs, this fact reinforces the continuous nature of Metronet's alleged fraud. (*See Id.*) ("Plaintiff Murray's injury is therefore ongoing, and Plaintiff Murray alleges as such."). But notably, "the doctrine of continuing wrong does not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of h[er] cause of action, even if h[er] relationship with the tortfeasor continues beyond that point." *Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008) (citing *Garneau v. Bush*, 838 N.E.2d 1134, 1145 (Ind. Ct. App. 2005)). As pled, Murray discovered the TSF when she received her monthly bill. (Compl. at ECF p. 11). At that time, Murray would have "learn[ed] of facts that should [have] le[d] to the discovery of h[er] cause of action[.]" *Johnson*, 885 N.E.2d at 31. That said, the exact date that Murray received her bill is unknown. What is known is that Metronet issued an invoice to Murray on March 28, 2022, (Docket No. 13-6 at ECF p. 1), and the Complaint was filed approximately two years and four months later. (Compl. at ECF p. 27). While it appears that the statute of limitations may have lapsed, the Court will defer making such a finding at the pleading stage and in the absence of an established timeline of events.

### 3. Voluntary Payment Doctrine

Metronet also raises the voluntary payment doctrine as an additional basis for dismissing Plaintiffs' Complaint. The voluntary payment rule provides that "money voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation* to the

7

recipient may not be recovered, on the ground of 'mistake,' merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation." *City of Jeffersonville v. Hallmark at Jeffersonville, L.P.*, 937 N.E.2d 402, 409 (Ind. Ct. App. 2010) (cleaned up) (emphases in original); *see also Helton v. Am. Gen. Life Ins. Co.,* 946 F. Supp. 2d 695, 713 (W.D. Ky. 2013) (same); *Viele Contracting, Inc. v. Performance Pipelining, Inc.*, No. A15-0875, 2016 WL 1724135, at *3 (Minn. Ct. App. May 2, 2016*) (same). Here, Plaintiffs allege that they "have been injured by [Metronet's] deceptive and fraudulent practices." (Compl. at ECF p. 3). Whether Metronet's representations were indeed fraudulent remains to be seen. At this early stage and with limited facts before the Court, application of the voluntary payment rule is not an appropriate basis for dismissal. *In re O'Flynn,* 654 B.R. 296, 334 (Bankr. S.D. Ind. 2023) (whether the voluntary payment rule applies "is better left to consideration on the merits, not this pleading stage").

### B. Unjust Enrichment Claims

Metronet argues that because Plaintiffs entered into an express agreement with Metronet, Plaintiffs cannot pursue an unjust enrichment claim. But Indiana law is not so clear cut. For example, the Indiana Court of Appeals has stated that the existence of an express agreement does not necessarily preclude a claim for unjust enrichment. *Coppolillo v. Cort*, 947 N.E.2d 994, 998–999 (Ind. Ct. App. 2011); *but see Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1065 (S.D. Ind. 2011) ("Indiana law only permits recovery under the equitable principle of unjust enrichment *when no adequate remedy at law exists*.") (emphases added). While Metronet cites Seventh Circuit caselaw to the contrary, *see Mashallah, Inc. v. West Bend Mutual Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021); *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 887 (7th Cir.

8

2022), those cases apply Illinois law.[3] At this early stage, Plaintiffs' unjust enrichment claim is not subject to dismissal.

### IV.    Conclusion

In sum, Defendant's Motion to Dismiss (Docket No. 13) is **GRANTED** as to Plaintiffs' fraud claim and **DENIED** as to their claim for unjust enrichment. Plaintiff is granted leave to file an Amended Complaint **by May 15, 2025**.

**SO ORDERED.**

Dated:  April 18, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Served electronically on all ECF-registered counsel of record.

---

[3] In presenting their arguments, both parties cite either Indiana caselaw or caselaw from the Seventh Circuit.