**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | |
|---|---|
| JYOTI GAUTAM MURRAY, ALLEN PERRY, and EMANUEL GOLD on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> METRO FIBERNET, LLC d/b/a METRONET, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 3:24-cv-00131-MPB-CSW |

**METRONET'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**TO STRIKE CERTAIN ALLEGATIONS IN THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    1.    Metronet ...................................................................................................................... 3

    2.    Plaintiff Murray ......................................................................................................... 4

    3.    Plaintiff Perry ............................................................................................................ 5

    4.    Plaintiff Gold ............................................................................................................. 7

ARGUMENT ............................................................................................................................ 7

I.       PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) ........................................................................................................................ 7

    A.    Plaintiff Gold Has Failed to State A Claim Based on the Attached Advertisements. ..................................................................................................... 8

    B.    Plaintiff Murray and Plaintiff Perry Fail to State Their Fraud-Based Claims with Sufficient Particularity ........................................................................ 9

    C.    Plaintiffs' Claims are Barred by the Voluntary Payment Doctrine. .................... 10

    D.    Plaintiff Murray's Indiana-Law Claim Is Barred by the Statute of Limitations. ......................................................................................................... 13

    E.    Plaintiffs Fail to State A Claim for Unjust Enrichment. ..................................... 15

    F.    Plaintiffs Fail to State A Claim for Negligent Misrepresentation ....................... 16

II.     PLAINTIFFS' REFERENCES TO ANONYMOUS COMPLAINTS VIA ONLINE PLATFORMS AND COMPLAINTS SUBMITTED TO GOVERNMENT AGENCIES MUST BE STRICKEN. ................................................ 19

CONCLUSION ....................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................8

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ..................................................................................................14

*Carroll v. BMW of N.A., LLC*,
   553 F.Supp.3d 588 (S.D. Ind. 2021).......................................................................................14

*Central States Joint Bd. v. Continental Assurance Co.*,
   117 Ill.App.3d 600, 73 Ill.Dec. 107, 453 N.E.2d 932 (Ill.App.Ct.1983)................................12

*Cincinnati Life Ins. Co. v. Beyrer*,
   722 F.3d 939 (7th Cir. 2013) ..................................................................................................10

*City of Covington v. Powell*,
   1859 WL 5581 (Ky. Ct. App. 1859).........................................................................................11

*City of Jeffersonville v. Hallmark at Jeffersonville, L.P.*,
   937 N.E.2d 402 (Ind. Ct. App. 2010)......................................................................................11

*Clanton v. United Skates of Am.*,
   686 N.E.2d 896 (Ind. App. 1997) ...........................................................................................12

*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*,
   250 F.3d 570 (7th Cir. 2001) ..................................................................................................12

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ....................................................................................................9

*DiMizio v. Romo*,
   756 N.E.2d 1018 (Ind. Ct. App. 2001).....................................................................................15

*Doehla v. Wathne Ltd., Inc.*,
   No. 98-cv-6087-CSH, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) .........................................10

*Driver v. LJ Ross Assoc., Inc.*,
   No. 3:18-cv-00220-MPB-RLY, 2019 WL 4060098 (S.D. Ind. Aug. 28, 2019).......................3

*Eagle Aircraft, Inc. v. Trojnar*,
    983 N.E.2d 648 (Ind. Ct. App. 2013)........................................................................................15

*Freson v. CenterPoint Energy Inc.*,
    No. 3:19-cv-00075-MPB-RLY, 2020 WL 13574992 (S.D. Ind. July 20, 2020)........................3

*Garneau v. Bush*,
    838 N.E.2d 1134 (Ind. Ct. App. 2005)......................................................................................14

*Gratz v. Redd*,
    1843 WL 3535 (Ky. Ct. App. 1843)...........................................................................................11

*Hardin v. Am. Elec. Power*,
    188 F.R.D. 509 (S.D. Ind. 1999)...............................................................................................19

*Harrison Mfg., LLC v. Bienias*,
    No. 4:11-cv-00065-TWP-WGH, 2013 WL 6486668 (S.D. Ind. Dec. 10, 2013)......................17

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ......................................................................................................3

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006) ....................................................................................................10

*Hill v. Gateway 2000, Inc.*,
    105 F.3d 1147 (7th Cir. 1997) ..................................................................................................12

*Hutzell v. Power Home Solar, LLC*,
    734 F.Supp.3d 761 (S.D. Ohio 2024) .......................................................................................12

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ....................................................................................................14

*Jeffrey v. Methodist Hosps.*,
    956 N.E.2d 151 (Ind. Ct. App. 2011)........................................................................................17

*Joannin v. Ogilvie*,
    52 N.W. 217 (Minn. 1892).........................................................................................................11

*Johnson v. Blackwell*,
    885 N.E.2d 25 (Ind. Ct. App. 2008)..........................................................................................14

*Johnson v. Bobcat Co.*,
    175 F. Supp. 3d 1130 (D. Minn. 2016)......................................................................................16

*Johnson v. Hubbard Broad., Inc.*,
    940 F. Supp. 1447 (D. Minn. 1996)...........................................................................................12

*United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana*,
   305 F. Supp. 3d 964 (S.D. Ind. 2018) ........................................................................................9

*Koehlinger v. State Lottery Com'n of Indiana*,
   933 N.E.2d 534 (Ind. Ct. App. 2010)......................................................................................15

*Lyons v. Leatt Corp.*,
   No. 4:15-CV-17-TLS, 2015 WL 7016469 (N.D. Ind. Nov. 10, 2015) .....................................9

*McCauley v. City of Chi.*,
   671 F.3d 611 (7th Cir. 2011) ...................................................................................................8

*Minn. Pipe and Equipment Co. v. Ameron Int'l Corp.*,
   938 F. Supp. 2d 862 (D. Minn. 2013)......................................................................................11

*Oelze v. Score Sports Venture, LLC*,
   927 N.E.2d 137 (Ill. App. Ct. 2010) ........................................................................................12

*Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*,
   No. 1:13-cv-00133-RLY-DKL, 2014 WL 6750042 (S.D. Ind. Dec. 1, 2014) ............17, 18, 19

*Palmer v. Gorecki*,
   844 N.E.2d 149 (Ind. Ct. App. 2006).......................................................................................14

*Republic Bank & Tr. Co. v. Bear, Stearns & Co., Inc.*,
   707 F. Supp. 2d 702 (W.D. Ky. 2010), aff'd, 683 F.3d 239 (6th Cir. 2012)............................16

*Richter v. Corp. Fin. Assocs., LLC*,
   No. 1:06-cv-1623-JDT-TAB, 2007 WL 1164649 (S.D. Ind. Apr. 19, 2007) ............................9

*Time Warner Enter. Co., L.P. v. Whiteman*,
   802 N.E.2d 886 (Ind. 2004) .....................................................................................................11

*Troth v. Warfield*,
   495 F. Supp. 3d 729 (N.D. Ind. 2020) .....................................................................................17

*Trytko v. Hubbell, Inc.*,
   28 F.3d 715 (7th Cir. 1994) .....................................................................................................17

*U.S. Bank, N.A. v. Integrity Land Title Corp.*,
   929 N.E.2d 742 (Ind. 2010) .....................................................................................................17

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
   987 F.2d 429 (7th Cir. 1993) .....................................................................................................3

*Villas at Woodson Bend Condo. Ass'n, Inc. v. S. Fork Dev., Inc.*,
   387 S.W.3d 352 (Ky. App. 2012)..............................................................................................12

*Winsler v. Ameriquest Mortg. Co.*,
   No. 4:11-cv-1070-DGK, 2012 WL 1854788 (W.D. Mo. May 21, 2012)...............................10

*Yoost v. Zalcberg*,
   925 N.E.2d 763 (Ind. Ct. App. 2010).........................................................................................14

## Statutes

Ind. Code § 24-5-0.5-5(b) ..............................................................................................................14

Indiana Deceptive Consumer Sales Act.............................................................................13, 14, 15

Minn. Stat. Ann. § 604.101.............................................................................................................16

## Other Authorities

Fed. R. Civ. P.
   8(a)(1)-(2) .................................................................................................................................8
   8(e)............................................................................................................................................3
   9(b)...............................................................................................................................1, 2, 9, 10
   12(b)(6) .................................................................................................................................7, 14
   12(f)........................................................................................................................................2, 19

Restatement (Second) of Torts § 552(1).........................................................................................17

## INTRODUCTION

In August 2024, Plaintiffs Jyoti Gautam Murray and Allen Perry brought this putative class action against Metro Fibernet, LLC d/b/a Metronet ("Metronet") alleging that Plaintiffs signed up for Metronet's internet service based on pricing representations made by Metronet in "advertising and marketing materials" that failed to disclose a monthly "Technology Services Fee" or "Tech Assure Fee" ("TAF"). Metronet filed a motion to dismiss Plaintiffs' Complaint for (among other reasons) failing to sufficiently identify the representations upon which they claimed to have relied in signing up for Metronet's internet service. This Court granted the motion to dismiss in large part, dismissing Plaintiffs' fraud-based advertising claims because Plaintiffs failed to satisfy Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). In an attempt to cure these deficiencies, Plaintiffs filed an Amended Complaint, adding an additional Plaintiff (Emanuel Gold[1]) and an additional cause of action for negligent misrepresentation.

Despite sweeping changes made to try to save their claims, the Amended Complaint actually demonstrates why Plaintiffs' claims *should* be dismissed, with prejudice, and the importance of compliance with Rule 9(b). All three of Metronet's representations that Plaintiffs put in front of this Court in their Amended Complaint either disclose that the prices advertised are subject to additional taxes and fees, or disclose the TAF explicitly. (Am. Cmplt. ¶¶ 19, 55, 57.) Specifically, the representation included in Paragraph 19 of the Amended Complaint has an asterisk next to the price ("$29.95/mo*") – and the information at the asterisk explicitly disclosed

---

[1] Metronet was not able to identify any customer named Emanuel Gold in its system. When Metronet raised this with Plaintiffs' counsel, Plaintiffs' counsel advised Metronet that Mr. Gold formally went by the name "Emanuel Isakov," which is the registered name for his account with Metronet. It is unclear why Plaintiffs did not address this issue in the Amended Complaint such that Metronet could be put on notice of the claims against it and conduct a factual investigation. At any rate, for purposes of this Motion, Metronet will refer to this Plaintiff as "Plaintiff Gold," but all Exhibits pertaining to Plaintiff Gold will reflect the name "Emanuel Isakov."

the TAF – yet the asterisked information was *again* omitted by Plaintiffs in their Amended Complaint (*Id.* ¶ 19), despite the fact that Metronet raised this issue in prior briefing (*see* Dkt No. 14 at 2-3). Further, the two advertisements included in Paragraphs 55 and 57 of the Amended Complaint upon which Plaintiff Gold claims to have relied state that the advertised price is "subject to the Customer's compliance with Metronet's Terms of Service" (which expressly describe the TAF) and that "[o]ffers do not include taxes or fees." (*Id.* ¶¶ 55, 57.)

Plaintiffs Murray and Perry's fraud-based claims should also be dismissed under Rule 9(b) as their respective claims still do not plead fraud with sufficient particularity. Plaintiff Murray's allegations made "to the best of [her] recollection" suffer from the same pleading deficiencies acknowledged in this Court's dismissal of her fraud-based claims in the original Complaint, and Plaintiff Perry does not sufficiently identify when he purportedly relied upon Metronet's representations such that Metronet is put on proper notice of his allegations.

Moreover, the voluntary payment doctrine bars Plaintiffs' claims because, after learning of the TAF, each Plaintiff continued to pay the TAF without protest for the duration of their Metronet services, even though they acknowledge they had other internet-access options. Regarding their unjust enrichment claims, Plaintiffs do not dispute the existence of an express contract between each Plaintiff and Metronet, which bars recovery under an unjust enrichment theory. Finally, Plaintiffs' negligent misrepresentation claim fails because Metronet's alleged misrepresentations were of fact, not opinion, and they were not rendered by the types of professionals against whom negligent misrepresentation claims may be brought under Indiana law.

Alternatively, this Court should (pursuant to Federal Rule of Civil Procedure 12(f)) strike Paragraph 65 from Plaintiffs' Amended Complaint, which contains anonymous, unverified, and unverifiable allegations against Metronet. Further, this Court should strike Exhibit A from

Plaintiffs' Amended Complaint, as the Exhibit does not support Plaintiffs' claims and only seeks to clutter the record and muddle the issues.

## BACKGROUND

### 1.    Metronet

Metronet is an internet service provider based in Evansville, Indiana, that provides internet services to both residential and business accounts. (Am. Cmplt. ¶ 14.) Metronet charges a monthly TAF to all residential customers, which is reflected in Metronet's Terms and Conditions, specifically in the Additional Terms of Service Addendum. ("Terms and Conditions," Ex. 1.[2]) Further, Plaintiffs included in the Amended Complaint what they allege is an example (without alleging that Plaintiffs actually saw this particular example) of a pricing representation from the Metronet website where Metronet falsely represented that the price of its lowest internet service plan is "$29.95/month":

---

[2]  "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiffs['] complaint and are central to [their] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (admitting letters referred to in the complaint that established the parties' contractual relationship). *See also Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (upholding district court's consideration of documents attached to a motion to dismiss which were "central to plaintiffs' case"); *Freson v. CenterPoint Energy Inc.*, No. 3:19-cv-00075-MPB-RLY, 2020 WL 13574992, at *1 (S.D. Ind. July 20, 2020) ("A court may consider documents as part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claims…[t]hus so long as the documents are integral to or explicitly relied upon in the complaint, the court may consider them without converting a motion to dismiss into one for summary judgment) (citing *Venture*); *Driver v. LJ Ross Assoc., Inc*., No. 3:18-cv-00220-MPB-RLY, 2019 WL 4060098, fn 1 (S.D. Ind. Aug. 28, 2019) ("[w]hile the letter was not included with [plaintiff's] complaint, the Court may consider it with [defendant's] motion to dismiss because it is referred to extensively in the complaint, it is central to [plaintiff's] claim, and [plaintiff] does not dispute its authenticity) (citing *Venture*); Federal Rule 8(e) ("[p]leadings must be construed so as to do justice").  Here, the allegations in the Amended Complaint implicate the process by which each of the Named Plaintiffs signed up for Metronet service, and Plaintiffs did not object to this Court's consideration of the same information on the original Motion to Dismiss. *See generally* Dkt No. 21.

(Am. Cmplt. ¶ 19.) However, in making this allegation, Plaintiffs misleadingly and purposefully omit the asterisk next to "$29.95/mo" – as the illustration clearly shows, the advertisement actually says "$29.95/mo*" – and Plaintiffs do not include or even acknowledge the language to which the asterisk refers.  Why? Because the Metronet website includes a statement which expressly includes verbiage that "[t]he advertised price does not include applicable taxes and fees (including installations fees and $12.95 per month Tech Assure fee)":



*Offers subject to change; available to new residential customers only. May not be combined with other offers. Services are subject to all applicable Terms and Conditions.  In select markets, Metronet may offer asymmetrical speeds. Advertised speed based on wired connection and compatible equipment; see our Network Management and Broadband Internet Service Disclosures for more details. Services not available in all areas. Restrictions apply. The pricing for the 1 Gb/1 Gb offer is locked for the first twelve months of service. The price will increase by $10 per month at the beginning of the thirteenth month of service. At the beginning of the twenty-fifth month of service, the price will increase by another $10 per month. At the beginning of the thirty-seventh month of service, Metronet's then current standard rate will apply. An eero router is provided at no additional cost when purchasing Metronet internet speeds up to 5 Gb; and equipment must be returned at time of cancellation. Gift Card offer requires purchase of 1 Gb/1 Gb or 2 Gb/2 Gb speeds between September 4, 2024 - September 30, 2024. To redeem gift card offer, customer must pay for 2 full months of qualified service(s). After 2 full months of payments, a link will be emailed to the account holder to claim the gift card. If eligible, your gift card will be mailed in 6-8 weeks. If qualified services are canceled or downgraded before the 12th month, the gift card amount will be billed to the customer account. One gift card offer per household. Upon any service suspension or voluntary service downgrade, pricing will revert to Metronet's then-current standard rates.**A trademark of Ziff Davis, LLC. Used under license. Reprinted with permission.© 2024 Ziff Davis, LLC. All Rights Reserved. The advertised price does not include applicable taxes and fees (including installation fees and $12.95 per month Tech Assure fee).

### 2.    Plaintiff Murray

Plaintiff Murray is a Minnesota resident who alleges that she signed up for Metronet's internet service on March 6, 2022. (Am. Cmplt. ¶ 35.) Plaintiff Murray alleges that she selected Metronet from among other internet service providers "[i]n reliance on Metronet's representations made in its advertisements and marketing materials[,]" yet does not identify the advertisement or representation on which she allegedly relied. (*Id.* ¶ 36.)

4

Metronet sent Plaintiff Murray an e-mail confirming her order and setting an installation date of March 25, 2022. (the "Murray Summary E-mail," Ex. 2.) The Murray Summary E-mail states in two places that Murray would be charged a Technology Service Fee of $9.95 per month. (*Id.*) During her installation on March 25, 2022, Plaintiff Murray signed a document acknowledging that the installation had taken place, and stating that she had "received, read, and agreed to the Terms and Conditions attached to this Service Order and the Additional Terms of Service Addendum which has been presented in [her] customer package." ("Murray Installation Confirmation," Ex. 3.) The Terms and Conditions and Additional Terms of Service Addendum disclosed the TAF. (Ex. 1, Terms and Conditions, § 9.)

As Plaintiff Murray acknowledges, the TAF appeared as a line item on her first invoice, dated March 28, 2022, and due April 18, 2022. ("Murray First Invoice," Ex. 4); *see also* Am. Cmplt. ¶ 40 ("Plaintiff Murray did not discover the [TAF] until she received her monthly bill reflecting the Fee[.]"). Yet, Plaintiff Murray does not allege that, when she became aware of the TAF she terminated her relationship with Metronet, nor that she canceled her Metronet internet service when she received her first invoice in March of 2022. Rather, Plaintiff Murray paid her first invoice, and thereafter remained a Metronet customer ***for over three years*** after she became aware of the TAF, paying each monthly invoice (including the TAF) without protest, even though she acknowledged she had other internet options available to her and that she was on a month-to-month contract that could be terminated at any time. (Am. Cmplt. ¶ 43.)

### 3.    Plaintiff Perry

Plaintiff Perry is a Kentucky resident who signed up for Metronet's internet service on April 18, 2024. (Am. Cmplt. ¶ 44.) Plaintiff Perry alleges that he selected Metronet from among other internet service providers "[i]n reliance on Metronet's representations made in its

advertisements and marketing materials….” (*Id.* ¶ 45.) However, Plaintiff Perry does not identify the online advertisement he claims to have relied upon.

Plaintiff Perry further alleges he “did not learn of the [TAF] until he signed up with Metronet over the phone and called to set up installation[.]” (*Id.* ¶ 49.) After the phone call described in Paragraph 49 of the Amended Complaint, Metronet sent Plaintiff Perry an e-mail confirming his April 18, 2024 order and setting an installation date of April 19, 2024. (“Perry Summary E-mail,” Ex. 5.) The Perry Summary Email included a summary of monthly charges that disclosed the TAF and confirmed his installation. Upon installation, Plaintiff Perry signed a document acknowledging the installation had taken place and stating that he had “received, read, and agree[d] to the Terms and Conditions attached to this Service Order and the Additional Terms of Service Addendum which has been presented in my customer package.” (“Perry Installation Confirmation,” Ex. 6.) Again, the Terms and Conditions and Additional Terms of Service Addendum disclosed the TAF. (Ex. 1, Terms and Conditions, § 9.) Further, Plaintiff Perry’s first invoice reflects the TAF. (“Perry First Invoice,” Ex. 7.) The invoice was due May 13, 2024, Plaintiff Perry timely paid it, and he has continued to pay his monthly invoices.

However, even if he “first learned” about the TAF when he spoke to an unidentified Metronet representative over the telephone, Plaintiff Perry chose to proceed with finalizing his Metronet order and scheduling installation of Metronet internet service rather than obtaining service from another provider. In fact, Plaintiff Perry ***remains a customer through the date of this filing*** and has paid his monthly charges (including the TAF) without protest, even though he acknowledges that he has other internet options available to him (Am. Cmplt. ¶ 52), and he is on a month-to-month contract that can be terminated at any time (*see id.* ¶¶ 43, 64) (Plaintiffs Murray and Gold both canceled their contracts with Metronet in March 2025).

### 4.    Plaintiff Gold

Plaintiff Gold is an Indiana resident who signed up for Metronet's internet services in March 2023. (Am. Cmplt. ¶ 53.) Plaintiff Gold alleges he did not learn of the TAF "until he signed up with Metronet," yet he does not explain at what time during the sign-up process he learned of the fee. (*Id.* ¶ 61.)

Plaintiff Gold attached two Metronet flyers he purportedly relied upon in signing up for Metronet's internet service, which both contain disclaimers (indicated with asterisks) that the "[o]ffers do not include taxes or fees." (*Id.* ¶¶ 55, 57.) Both of these flyers also state that the promotions "are subject to Customer's compliance with Metronet's Terms of Service[,]" which disclose the TAF and the customer's responsibility to pay it. (*Id.*); *see also* (Ex. 1, Terms & Conditions § 9.) Further, Plaintiff Gold's first invoice reflects the TAF. ("Gold (Isakov) First Invoice," Ex. 8.)

Even taking as true the allegation that he "first learned" about the TAF when he signed up for Metronet's internet service, Plaintiff Gold chose to proceed with finalizing his Metronet order and scheduling installation of Metronet internet service rather than obtaining service from another provider. Plaintiff Gold remained a customer through March 2025, and had paid his monthly charges (including the TAF) ***for two years*** without protest, even though he acknowledges that he has other internet options available to him, and he was on a month-to-month contract that could have been terminated at any time. (*See id.* ¶ 64.)

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).

To survive dismissal under Rule 12(b)(6), a complaint must provide "a short and plain statement" that establishes the grounds for the court's jurisdiction and shows "that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[L]egal conclusions and conclusory allegations merely reciting the elements of a claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). For the reasons set forth below, Plaintiffs fail to state a claim under this standard.

### A.    Plaintiff Gold Has Failed to State A Claim Based on the Attached Advertisements.

In the Amended Complaint, Plaintiff Gold attaches two separate advertisements to support his fraud-based claims, alleging that neither "of these mailers mentioned the mandatory [TAF]" and "[t]he promotion did not advise him of the existence of a [TAF]." (Am. Cmplt. ¶¶ 56, 58.) However, the advertisement itself dispels such allegations – both advertisements expressly state that the offer is "subject to Customer's compliance with Metronet's Terms of Service," and "[o]ffers do not include taxes ***and fees***." (*Id.* (emphasis added).) Metronet's Terms of Service expressly state that "[t]he monthly [TAF] ***is required*** to receive [Metronet's] Broadband Services and covers any service call or broken Metronet-owned Equipment." (Ex. 1, Terms and Conditions, § 9 (emphasis added).) Thus, at the time of receiving the allegedly deceptive advertisement, Plaintiff Gold was put on notice of the TAF, regardless of whether he chose to read Metronet's Terms of Service, and by the express statement that other taxes and fees apply.

Simply put, on the face of Plaintiff Gold's own allegations, his claims fail as a matter of law and must be dismissed.

8

**B.     Plaintiff Murray and Plaintiff Perry Fail to State Their Fraud-Based Claims with Sufficient Particularity.**

Rule 9(b) requires a plaintiff pleading fraud to state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In other words, plaintiffs "must state 'the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Lyons v. Leatt Corp.*, No. 4:15-CV-17-TLS, 2015 WL 7016469, at *4 (N.D. Ind. Nov. 10, 2015).

As for Plaintiff Murray, despite removing the words "upon information and belief," she included "to the best of [her] recollection, Plaintiff Murray" was exposed to the advertising and marketing materials in or around March 2022. (*Compare* Cmplt. ¶ 31, *with* Am. Cmplt. ¶ 37). This is a distinction without a difference. Plaintiff Murray's wordsmithing amounts to nothing more than a regurgitation of the same allegations in the initial Complaint, which formed the bases of this Court's dismissal of her fraud-based advertising claims. (Dkt No. 41 at 3-6.) "Rule 9(b)'s particularly requirement is not satisfied by allegations of fraud based on 'information and belief,' unless the facts are peculiarly within the adversary's knowledge." *Richter v. Corp. Fin. Assocs., LLC*, No. 1:06-cv-1623-JDT-TAB, 2007 WL 1164649, at *2 (S.D. Ind. Apr. 19, 2007) (citation omitted); *see also United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana*, 305 F. Supp. 3d 964, 978 (S.D. Ind. 2018) (dismissing state fraud claim where plaintiff's allegations were made "upon information and belief"). Plaintiff Murray's allegations which form the bases of her fraud-based claims in the Amended Complaint are squarely within her own knowledge, and fare no better than the allegations set forth in her initial Complaint.

As for Plaintiff Perry, he alleges he was "first exposed to [Metronet's] representations…via an online promotion between January 2024 – April 2024." (Am. Cmplt. ¶ 46.) However, alleging

he was exposed to an online promotion at some point over a four-month period does not satisfy the particularity requirements of Rule 9(b). *Compare, e.g., Hefferman v. Bass*, 467 F.3d 596, 601-02 (7th Cir. 2006) (finding a span of six weeks met the requirements of Rule 9(b)), *with Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (finding a span of six months did not meet the "when" requirement of Rule 9(b)); *see also, e.g., Doehla v. Wathne Ltd., Inc*., No. 98-cv-6087-CSH, 1999 WL 566311, at *17 (S.D.N.Y. Aug. 3, 1999) (finding that a four-month period is insufficient to satisfy Rule 9(b)); *Winsler v. Ameriquest Mortg. Co*., No. 4:11-cv-1070-DGK, 2012 WL 1854788, at *3 (W.D. Mo. May 21, 2012) ("a four month period is...unhelpful and inadequate because it does not narrow the time frame down enough"). The period from January 2024 to April 2024 – 121 days – does not provide sufficient notice to Metronet as to *when* Plaintiff Perry was exposed to the allegedly deceptive advertisement, particularly when there is a change in season and a new fiscal quarter during that period, inviting businesses to drastically change their marketing and advertising materials if they so choose. Additionally, he muddles the exact type of "online promotion" he claims to have seen. Was it an advertisement on a third-party webpage? A news or trade article discussing a variety of internet providers? An offer e-mailed directly to him? Or Metronet's own webpage (like the "exemplar" in Paragraph 19, which did disclose the TAF)? All of these may be considered "online promotions," but only Plaintiff Perry can specify what "online promotion" he claims to have seen such that Metronet can investigate his claim. Moreover, this type of information – when Plaintiff Perry was exposed to Metronet's allegedly deceptive advertising and marketing materials via online promotion or over the phone – is squarely within his knowledge.

### C.    Plaintiffs' Claims are Barred by the Voluntary Payment Doctrine.

"[M]oney voluntarily paid in the face of a recognized uncertainty as to the existence of the payor's obligation to the recipient may not be recovered, on the ground of 'mistake,' merely

10

because the payment is subsequently revealed to have exceed the true amount of the underlying obligation." *City of Jeffersonville v. Hallmark at Jeffersonville, L.P.*, 937 N.E.2d 402, 409 (Ind. Ct. App. 2010); *see also Time Warner Enter. Co., L.P. v. Whiteman*, 802 N.E.2d 886, 890 (Ind. 2004) ("[g]enerally a voluntary payment made under mistake or in ignorance of the law, but with a full knowledge of all the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recovered back"); *Minn. Pipe and Equipment Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 874-75 (D. Minn. 2013) ("[t]he voluntary payment doctrine provides that one who has knowledge of the material facts and makes a payment voluntarily cannot later recover it on the ground he or she was under no legal obligation to make the payment in the first place"); *Joannin v. Ogilvie*, 52 N.W. 217, 217 (Minn. 1892) ("[t]he rule is that money paid voluntarily, with full knowledge of the facts, cannot be recovered back. If a [person] chooses to give away [their] money, or to take [their] chances whether [they] are giving it away or not, [they] cannot afterwards change [their] mind; but it is open to [them] to show that [they] supposed the facts to be otherwise, or that [they] really had no choice"); *Gratz v. Redd*, 1843 WL 3535, at *11 (Ky. Ct. App. 1843) ("where money has been paid under a clear and palpable mistake of either law or fact, or both, essentially bearing upon and affecting or superinducing the payment, without cause or consideration, and which in law, honor and conscience, was not due and payable, and which in honor, morality and good conscience, ought not to be retained, it may be recovered back"); *City of Covington v. Powell*, 1859 WL 5581, at *1 (Ky. Ct. App. 1859) ("[m]oney voluntarily paid by one who knows [they are] not bound to pay, cannot be recovered back.").

Each of the Named Plaintiffs accepted Metronet's Terms and Conditions when agreeing to install Metronet's internet services – Plaintiff Murray on March 28, 2022, Plaintiff Perry on April 19, 2024, and Plaintiff Gold as part of the sign-up and installation process for Metronet's internet service in March 2023. (Ex. 5, Murray Installation Confirmation; Ex. 6, Perry Installation

Confirmation; Am. Cmplt. ¶¶ 53, 61.) Metronet's Terms and Conditions expressly provide that the TAF "is required to receive our Broadband Servicing and covers any service call or broken Metronet-owned Equipment." (Ex. 1, Terms and Conditions § 9.)  When Plaintiffs agreed to Metronet's Terms and Conditions, they were aware of the TAF and its purpose,[3] and voluntarily and without protest paid the TAF. Therefore, the voluntary payment doctrine bars claims for any payments made after each respective disclosure.

Even if Plaintiffs were not put on notice of the TAF prior to installation (which Metronet contends they were), each Plaintiff specifically acknowledges they were put on notice of the TAF shortly after signing up for Metronet's internet services, yet still paid the TAF when they paid each monthly invoice:

- Plaintiff Murray alleges she signed up for Metronet internet service on or around March 6, 2022, and discovered the TAF charge when she received her first monthly

---

[3] "Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it." *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. App. 1997). Other courts across the Midwest have arrived at the same conclusion. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) ("It is an elementary principle of contract law that '[a party] may not enter into a transaction with [its] eyes closed to available information and then charge that [it] has been deceived by another.'") (quoting *Central States Joint Bd. v. Continental Assurance Co.*, 117 Ill.App.3d 600, 73 Ill.Dec. 107, 453 N.E.2d 932, 936 (Ill.App.Ct.1983)); *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 146 (Ill. App. Ct. 2010) ("[p]laintiff had a duty to read the agreement before she signed it. She did not read it…[i]t was her own decision not to read it…[h]er failure to read the release should not be held against defendant"); *Hutzell v. Power Home Solar, LLC*, 734 F.Supp.3d 761, 772 (S.D. Ohio 2024) (it is a "well-settled principle that a person who is competent to contract and who signs a written document without reading it is bound by its terms and cannot avoid its consequences" and "[a] person who signs a contract without making a reasonable effort to know its contents cannot…avoid the effect of the contract"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) ("[c]ompetent adults are bound by [Terms], read or unread") (finding plaintiffs were bound by an arbitration provision despite having never read the Terms); *Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1454 (D. Minn. 1996) (explaining how "a literate party who signs a contract, in ignorance of its contents, remains bound by its terms and conditions" and that "[f]ailing to read or understand the language of a contract serves as no defense under the law."); *Villas at Woodson Bend Condo. Ass'n, Inc. v. S. Fork Dev., Inc.*, 387 S.W.3d 352, 358-59 (Ky. App. 2012) ("It is abundantly clear that a party is bound by his agreement with the terms of a contract he has signed and had an opportunity to review, and ignorance of the terms thereof is not a defense to the rights and obligations set forth therein.").

bill. (Am. Cmplt. ¶¶ 35, 40.) After "discovering" the TAF charge, Plaintiff Murray proceeded to timely pay her first invoice before April 18, 2022, and then further proceeded to pay for Metronet's services *for over three years* despite knowing of Metronet's TAF charge and acknowledging that she had other internet service providers she could have used. (*Id*. ¶ 43.)

- Plaintiff Perry alleges he signed up for Metronet internet service in April 2024, and discovered the TAF when he signed up over the phone and called to set up installation. (*Id.* ¶¶ 44, 49.) After "discovering" the TAF charge, Plaintiff Perry proceeded with the sign up process, installation of the services, and timely payment of his monthly bills. In fact, Plaintiff Perry has continued to pay the TAF charge voluntarily *to this day*, even though he acknowledges that he has other internet options. (*Id*. ¶ 47.)

- Plaintiff Gold alleges he signed up for Metronet's internet service in March 2023 and that he learned of the TAF when he "signed up with Metronet[.]" (*Id.* ¶ 53.) After "discovering" the TAF charge, Plaintiff Gold proceeded with the installation of his services, timely paid his first monthly bill, and continued to pay his monthly bills (including the TAF) for *two years*, until March 2025, even though he had other internet service providers available to him. (*Id.* ¶ 64.)

Despite agreeing to Metronet's Term and Conditions – which provide notice of the TAF and outline its purpose – Plaintiffs were made aware of the TAF and the final price of Metronet's internet service at various points throughout the sign-up process, and even after they signed up for Metronet's service, yet *continued to pay* the TAF without protest. Therefore, Plaintiffs were aware of "the true amount of the underlying obligation," and voluntarily paid the TAF. Importantly, each Plaintiff voluntarily paid the TAF not merely once, but for months and years on end – even after they filed this lawsuit. Each monthly payment was voluntarily made and with full knowledge that the amount owed and paid included the TAF. For this reason, Metronet respectfully requests this Court dismiss each of Plaintiffs' claims in their entirety.

### D.    Plaintiff Murray's Indiana-Law Claim Is Barred by the Statute of Limitations.

Plaintiffs bring a claim under the Indiana Deceptive Consumer Sales Act (IDCSA) on behalf of the nationwide class, or in the alternative, on behalf of Plaintiff Gold and the Indiana Subclass. (*See* Am. Cmplt. ¶ 78.) Plaintiffs allege that "Indiana law applies to Plaintiffs' claims,

13

even though [two of the three] are non-resident consumer plaintiffs." (*Id.*) However, the statute of limitations under the IDCSA is two years. Ind. Code § 24-5-0.5-5(b); *see also Carroll v. BMW of N.A., LLC*, 553 F.Supp.3d 588, 615-16 (S.D. Ind. 2021) (finding plaintiff's IDCSA claims are barred by the two-year statute of limitations). "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses[;] [b]ut when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). Under the "continuing wrong" doctrine, where "the statute of limitations begins to run at the end of the continuing wrongful act," a plaintiff must establish that "the alleged injury-producing conduct was of a continuous nature." *Yoost v. Zalcberg*, 925 N.E.2d 763, 771 (Ind. Ct. App. 2010) (quoting *Palmer v. Gorecki*, 844 N.E.2d 149, 156 (Ind. Ct. App. 2006)). Notably, "the doctrine of continuing wrong does not prevent the statute of limitations from beginning to run when the plaintiff learns of the facts that should lead to discovery of h[er] cause of action, even if h[er] relationship with the tortfeasor continues beyond that point." *Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008) (citing *Garneau v. Bush*, 838 N.E.2d 1134, 1145 (Ind. Ct. App. 2005)).

Plaintiff Murray alleges that she discovered the TAF when she received her monthly bill. (Am. Cmplt. ¶ 40.)  However, Plaintiff Murray pleads that she signed up for Metronet's internet services on March 6, 2022 (*Id.* ¶ 35), meaning her first monthly bill (for March 2022) was the bill issued on March 28, 2022 (Ex. 4, Murray First Invoice). Thus, by March 28, 2022, Plaintiff Murray "learn[ed] of facts that should [have] le[d] to the discovery of h[er] cause of action[.]" *Johnson*, 885 N.E.2d at 31. Plaintiff Murray's knowledge of the TAF is further exemplified by the Murray Summary E-mail, dated March 25, 2022, which disclosed the fee in two separate places. (Ex. 2,

14

Murray Summary Email.) Given Plaintiff Murray's allegations that she signed up in early March 2022 and discovered the TAF when she received her monthly bill, the two-year statute of limitations was exhausted by March 2024. (Am. Cmplt. ¶¶ 35, 40.) Yet, the original Complaint was not filed until approximately two years and four months after she allegedly discovered the TAF, on August 2, 2024. (*See* Dkt No. 1.) Accordingly, Plaintiff Murray's IDCSA claim must be dismissed.

### E.    Plaintiffs Fail to State A Claim for Unjust Enrichment.

The Indiana Court of Appeals has held that "unjust enrichment is an equitable doctrine which permits recovery where the circumstances are such that under the law of natural and immutable justice there should be recovery as though there has been a promise, and that a contract precludes application of unjust enrichment because (1) a contract provides a remedy at law and (2)—as a remnant of chancery procedure—a plaintiff may not pursue an equitable remedy when there is a remedy at law." *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 660 (Ind. Ct. App. 2013) (quotations omitted). Courts in Indiana have consistently held that where an express contract exists between the parties, plaintiffs cannot pursue a claim of unjust enrichment. *See, e.g.*, *id.* (finding that because "a contract controlled the relationship between" the parties, "on this basis alone, the equitable doctrine of unjust enrichment does not apply, as [the plaintiff's] remedy would be at law, not in equity"); *DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001) (finding that "[u]njust enrichment operates when there is no governing contract" and the trial court "improperly invoked the equitable theory of unjust enrichment" where "there [was a] contract, and [plaintiffs were] suing to enforce" the terms thereof); *Koehlinger v. State Lottery Com'n of Indiana*, 933 N.E.2d 534, 542 (Ind. Ct. App. 2010) (finding the trial court did not err in granting summary judgment on plaintiff's unjust enrichment cause of action in defendant's favor where a contract governed the parties' relationship).

15

Here, Plaintiffs entered into a valid and enforceable contract with Metronet when signing up for its internet services. (*See, e.g.*, Exs. 3, 6 (putting Plaintiff Murray and Plaintiff Perry on notice of the TAF in the installation confirmation); *see also* Ex. 1 (putting Plaintiffs on notice of the TAF in the Terms and Conditions); *see also* Exs. 4, 7, 8 (showing that Plaintiffs assented to the Terms and Conditions, thus creating a binding and enforceable contract between the Parties).) Rather, despite being put on notice multiple times throughout the sign-up and installation process and continuing to pay the TAF without protest, Plaintiffs now seek to skirt their contractual obligation to pay the TAF by bringing an unjust enrichment theory of liability. Plaintiffs cannot claim Metronet was unjustly enriched via Plaintiffs' mere compliance with their contractual obligations. Because there was an express agreement between Metronet and each Plaintiff, Plaintiffs cannot assert an unjust enrichment claim.

### F.    Plaintiffs Fail to State A Claim for Negligent Misrepresentation.

To sufficiently plead negligent misrepresentation under Indiana law,[4] a plaintiff must allege that "(1) the defendant, in the course of his business, profession, or employment, or in any

---

[4] Even if Plaintiffs' negligent misrepresentation claims were governed by Kentucky or Minnesota law, their claims would still fail. In Kentucky, a negligent misrepresentation claim "requires an affirmative false statement; a mere omission will not do." *Republic Bank & Tr. Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 714 (W.D. Ky. 2010), aff'd, 683 F.3d 239 (6th Cir. 2012). Because Plaintiffs argue that Metronet "fails to adequately disclose" the TAF and "obscure[es] the true costs of its internet service," the root of Plaintiffs' claims is in *omission*, and not an affirmative false statement. (Am. Cmplt. ¶¶ 5, 7.) Moreover, under Minnesota law, "[a] buyer may not bring a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly." Minn. Stat. Ann. § 604.101 (West); *see also Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1145 (D. Minn. 2016) (finding that § 604.101 barred the plaintiff's claim for negligent misrepresentation because he cannot simultaneously allege an "intentional or reckless" misrepresentation and a "negligent misrepresentation."). Here, Plaintiffs did not allege that Metronet intentionally or recklessly failed to disclose the TAF, but rather, that the alleged omission was a "negligent" misrepresentation. (Am. Cmplt. ¶ 125) ("Defendant has negligently represented that its broadband internet service is a low price."); *see also Johnson*, 175 F. Supp. 3d at 1145 ("[The plaintiff] does not allege that the misrepresentation was intentional or reckless (nor could he, as his claim is one for **negligent**

other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions; (2) the defendant fails to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relies upon the information supplied by the defendant; and (4) the plaintiff suffers pecuniary loss as a result." *Harrison Mfg., LLC v. Bienias*, No. 4:11-cv-00065-TWP-WGH, 2013 WL 6486668, at *6 (S.D. Ind. Dec. 10, 2013) (citing *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010) (adopting the definition of negligent misrepresentation from the Restatement (Second) of Torts § 552(1))). However, "negligent misrepresentation law in Indiana has been described as 'relative chaos[,]'" and "Indiana courts have historically applied section § 552(1) quite narrowly." *Troth v. Warfield*, 495 F. Supp. 3d 729, 742-43 (N.D. Ind. 2020) (citing *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 721 (7th Cir. 1994)). The tort was originally limited to employer-employee relationships, but it has since been narrowly widened "to include those whose profession includes the giving of opinions." *Id.* (citing *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010)). For example, "[t]he class of professionals who could be subject to a negligent misrepresentation claim includes, but is not limited to, 'brokers, attorneys, abstractors, and surveyors.'" *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 1:13-cv-00133-RLY-DKL, 2014 WL 6750042, at *7 (S.D. Ind. Dec. 1, 2014) (citing *Jeffrey v. Methodist Hosps.*, 956 N.E.2d 151, 156 n. 7 (Ind. Ct. App. 2011)).

Considering the narrow application of negligent misrepresentation claims, the court in *Pain Ctr. of SE Indiana, LLC* held that the plaintiffs could not sustain a negligent misrepresentation claim against the defendant for alleged misrepresentations (and omissions) regarding its software. 2014 WL 6750042, at *7. The plaintiffs alleged that, when selling software to the plaintiffs,

---

misrepresentation") (emphasis in original). Thus, even if Plaintiffs' negligent misrepresentation claims were governed by either Kentucky or Minnesota law, their claims would still fail.

defendant misrepresented "the software's functional capacity" and "'failed to disclose that [defendant] was never positioned to resolve [p]laintiffs' technical issues as they arose.'" *Id.* Thus, the plaintiffs alleged they were induced to purchase the software and "continued their business relationship with [defendant] based on their reasonable reliance on [defendant's] representations." *Id.*

The Court granted defendant's motion for judgment on the pleadings as to the plaintiffs' negligent misrepresentation for two reasons. First, defendant's staff members who made the alleged misrepresentation were not "professionals," so their opinions about the qualities and functions of software were not "professional opinions." Rather, the plaintiffs had a "salesperson-customer" or "support staff-customer" relationship with defendant, which is insufficient to support a claim for negligent misrepresentation under Indiana law. Second, the Court found that because the alleged misrepresentations were of fact, and not of opinion, the plaintiffs could not sustain a negligent misrepresentation claim.

The facts present in this case mirror those in *Pain Ct. of SE Indiana, LLC*. Here, Plaintiffs purport that Metronet made representations in "advertisements" and "marketing materials" that were "false and misleading" because they allegedly omitted the TAF. (Am. Cmplt. ¶¶ 131-32.) The fact that the alleged misrepresentations and/or omissions were made in advertisements for Metronet's internet services exemplifies that Metronet had a "salesperson-customer" relationship with Plaintiffs – not a professional relationship in which professional opinions would be given. Because negligent misrepresentation claims may only be sustained in the limited circumstances where a professional opinion is given, Plaintiffs cannot sustain a negligent misrepresentation claim. *See Pain Ctr. of SE Indiana, LLC*, 2014 WL 6750042, at *7.

Further, Plaintiffs specifically admit that the alleged misrepresentations and/or omissions were facts, not opinions. (Am. Cmplt. ¶¶ 126, 127, 131.) For example, Plaintiffs plead that the

18

alleged "true cost[]" of Metronet's internet service was a "material fact" that was "false." (*Id.* ¶¶ 126-27.) At its core, Plaintiffs' claims surround the total price of a service, and questions as to the total price of a service are a factual inquiry. Therefore, because the alleged misrepresentation and/or omission was of fact, not of opinion, Plaintiffs' claim for negligent misrepresentation fails. *See Pain Ctr. of SE Indiana, LLC*, 2014 WL 6750042, at *7.

Thus, Plaintiffs' negligent misrepresentation claim fails because the alleged misrepresentations are not professional opinions, but rather, alleged omissions and/or misrepresentations of fact.

## II.    PLAINTIFFS' REFERENCES TO ANONYMOUS COMPLAINTS VIA ONLINE PLATFORMS AND COMPLAINTS SUBMITTED TO GOVERNMENT AGENCIES MUST BE STRICKEN.

Under Federal Rule of Civil Procedure 12(f), courts "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[W]here a motion to strike removes unnecessary clutter from the case, [it] serve[s] to expedite, not delay." *Hardin v. Am. Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999) (citation omitted). "Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id.* (citation omitted).

Here, Plaintiffs cite to seven anonymous "reviews" on various online platforms related to Metronet's alleged misrepresentations, (Am. Cmplt. ¶ 65), and attach over 50 pages of consumer complaints submitted to various federal and state agencies produced by Metronet in the course of discovery of this matter during the pendency of Metronet's initial Motion to Dismiss, (Am. Cmplt. Ex. A). First, the online reviews in Paragraph 65 are posted anonymously, ostensibly by non-parties. Neither Metronet nor the fact-finder will be able to determine whether these non-parties are actual customers of Metronet, or whether the claims have any validity. If these allegations were to remain in the Complaint, Metronet will be left without opportunity to respond to these

anonymous, unverified, and unverifiable complaints. Plaintiffs cannot rely on anonymous complaints that neither Plaintiffs not Metronet will be able to verify. Second, the complaints made to various federal and state agencies in Exhibit A provide no further support for *Plaintiffs'* claims and are irrelevant to the claims alleged by Plaintiffs. None of the Plaintiffs allege they submitted any complaints. Attaching such complaints does nothing more than clutter and improperly inject arguably inadmissible evidence into the record.

Even if Plaintiffs' claims survive the Motion to Dismiss, there is no reason to clutter this case with immaterial and scandalous allegations that will have zero impact on Plaintiffs' claims. Accordingly, Metronet respectfully requests that this Court strike Paragraph 65 and Exhibit A from the Complaint.

## CONCLUSION

For the reasons set forth above, Metronet respectfully requests that this Court grant Metronet's Motion to Dismiss.

Dated: May 29, 2025                    Respectfully submitted,

By: s/ *Scott T. Schutte*
    Scott T. Schutte
    Spenser B. Jaenichen
    Allison R. Heil
    **MORGAN, LEWIS & BOCKIUS LLP**
    110 North Wacker Drive, Suite 2800
    Chicago, IL 60606-1511
    Phone: 312.324.1000/Fax: 312.324.1001
    scott.schutte@morganlewis.com
    spenser.jaenichen@morganlewis.com
    allison.heil@morganlewis.com

    *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Scott T. Schutte, an attorney, certify that I filed the foregoing using the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record on this 29th day of May, 2025.

s/ *Scott T. Schutte*
Scott T. Schutte