**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

|  |  |
|---|---|
| JYOTI GAUTAM MURRAY, ALLEN PERRY, and EMANUEL GOLD, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> METRO FIBERNET, LLC d/b/a METRONET, <br><br> Defendant. | Case No. 3:24-cv-00131-MPB-CSW |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

    I.    This Court Has Already Rejected Most of Defendant's Arguments ................................... 4

    II.    Plaintiff Gold States a Claim Under Rule 12(b)(6) ............................................................ 5

    III.    Plaintiff Murray and Plaintiff Perry Plead Their Claims with Particularity ...................... 7

    IV.    As the Court Previously Held, None of the Plaintiffs Claims Are, At Least at this Stage, Barred by the Voluntary Payment Doctrine .................................................... 12

    V.    Plaintiff Murray's Indiana-Law Claim Falls Within the Statute of Limitations ................................................................................................................. 14

    VI.    As the Court Previously Held, Plaintiffs State an Unjust Enrichment Claim ................................................................................................................................ 15

    VII.    Plaintiffs State a Claim for Negligent Misrepresentation ................................................ 16

    VIII.    The "Anonymous Complaints" and Complaints to Government Agencies Should Not Be Stricken ................................................................................................... 18

CONCLUSION .................................................................................................................. 19

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                    Page(s)

*Ali v. Allstate Northbrook Indemnity, Co.,*
    2024 WL 1199023 (W.D. Ky. Mar. 20, 2024)......................................................... 7-8

*Arizona v. California,*
    460 U.S. 605, 103 S. Ct. 1382 (1983)........................................................................4

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)........................................................................2

*Asis Internet Servs. v. Subscriberbase Inc.,*
    2010 WL 1267763 (N.D. Cal. Apr. 1, 2010)..............................................................6

*Avitia v. Metro. Club of Chi., Inc.,*
    49 F.3d 1219 (7th Cir. 1995)......................................................................................4

*Barker v. Kapsch Trafficcom USA, Inc.,*
    2020 WL 2832092 (S.D. Ind. June 1, 2020) ..............................................................7

*Beardsall v. CVS Pharmacy, Inc.,*
    953 F.3d 969 (7th Cir. 2020)......................................................................................6

*Bell v. Publix Super Markets, Inc.,*
    982 F.3d 468 (7th Cir. 2020)......................................................................................6

*Bilek v. Fed. Ins. Co.,*
    8 F.4th 581 (7th Cir. 2021).........................................................................................3

*Bosch v. Bayer Healthcare Pharm., Inc.,*
    13 F. Supp. 3d 730 (W.D. Ky. 2014)........................................................................11

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014)......................................................................................7

*Cannon v. Armstrong Containers, Inc.,*
    92 F.4th 688 (7th Cir. 2024)...................................................................................4, 5

*Celadon Trucking Servs., Inc. v. Wilmoth,*
    70 N.E.3d 833 (Ind. Ct. App. 2017).........................................................................15

*Cleveland v. Whirlpool Corp.,*
    550 F. Supp. 3d 660 (D. Minn. 2021) ..............................................................7, 8, 11

*Coppolillo v. Cort,*
   947 N.E.2d 994 (Ind. Ct. App. 2011) ........................................................15, 16

*Corley v. Rosewood Care Ctr.,*
   142 F.3d 1041 (7th Cir. 1998) ........................................................................8

*Crawford v. AriZona Beverages USA LLC,*
   2023 WL 1100260 (S.D. Ill. Jan. 30, 2023) .................................................12

*Doehla v. Wathne Limited, Inc.,*
   1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) ...................................................12

*Dumont v. Reily Foods Co.,*
   934 F.3d 35 (1st Cir. 2019) .............................................................................7

*Gen. Elec. Cap. Corp. v. Lease Resol. Corp.,*
   128 F.3d 1074 (7th Cir. 1997) ........................................................................3

*Graham v. Bd. Of Educ.,*
   8 F. 4th 625 (7th Cir. 2021) ............................................................................3

*Grede v. FCStone, LLC,*
   867 F.3d 767 (7th Cir. 2017) ..........................................................................5

*Hall v. Marriott Int'l, Inc.,*
   2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ................................................9

*Heller Fin., Inc. v. Midwhey Power Co.,*
   883 F.2d 1286 (7th Cir. 1989) ........................................................................3

*Helton v. Am. Gen. Life Ins. Co.,*
   946 F. Supp. 2d 695 (W.D. Ky. 2013) ..........................................................13

*In re O'Flynn,*
   654 B.R. 296 (Bankr. SD. Ind. 2023) .....................................................12, 13

*Kahn v. Walmart Inc.,*
   107 F.4th 585 (7th Cir. 2024) ......................................................................6, 9

*Kennedy v. Prime Hydration, LLC,*
   2025 WL 697674 (W.D. Ky. Mar. 4, 2025) ..............................................16, 17

*Kesterke v. BCD White Inc.,*
   2018 WL 3343079 (N.D. Ind. July 9, 2018) ...................................................3

*Lachmund v. ADM Inv. Servs., Inc.*,
    191 F.3d 777 (7th Cir. 1999) ................................................................8

*Lawson v. First Union Mortgage Co.*,
    786 N.E.2d 279 (Ind. Ct. App. 2003) ...................................................12

*Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*,
    88 F. Supp. 3d 985 (D. Minn. 2015) ...............................................16, 18

*Lott v. Louisville Metro Gov't*,
    2021 WL 1031008 (W.D. Ky. Mar. 17, 2021) .......................................13

*Lyons v. Richmond Cmty. Sch. Corp.*,
    19 N.E.3d 254 (Ind. 2014) ..................................................................15

*McBrady v. Monarch Elevator Co.*,
    113 Minn. 104 (1910) ........................................................................13

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ................................................................3

*McKee v. Audible, Inc.*,
    2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) .........................................6

*Metal Pro Roofing, LLC v. Cincinnati Ins. Co.*,
    130 N.E.3d 653 (Ind. Ct. App. 2019) ....................................................7

*Moore v. Soc. Coaching-Credit Repair, LLC*,
    2024 WL 1929431 (N.D. Ind. May 1, 2024) ..........................................8

*Nail v. Lens.com*,
    2024 WL 4477012 (D. Nev. Oct. 11, 2024) ...........................................9

*Park 100 Investors, Inc. v. Kartes*,
    650 N.E.2d 347 (Ind. Ct. App. 1995) ..................................................13

*Pepper v. U.S.*,
    562 U.S. 476, 131 S. Ct. 1229 (2011) ....................................................4

*In re Cook Med., Inc. IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*,
    2020 US Dist. LEXIS 238991 (S.D. Ind. Nov. 13, 2020) ......................14

*Rock v. Nat'l Collegiate Athletic Ass'n*,
    2013 WL 4479815 (S.D. Ind. Aug. 16, 2013) .........................................4

*Rubio v. Polaris, Inc.*,
    2022 WL 13909757 (S.D. Ind. Oct. 24, 2022)........................................................10

*Santamarina v. Sears, Roebuck & Co.*,
    466 F.3d 570 (7th Cir. 2006)........................................................4

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002)........................................................4

*U.S. v. Williams*,
    2024 WL 4475001 (N.D. Ind. Oct. 11, 2024)........................................................9

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019)........................................................7, 8

*Watson v. Crumbl LLC*,
    736 F. Supp. 3d 827 (E.D. Cal. 2024)........................................................9

*Winsler v. Ameriquest Mortg. Co.*,
    2012 WL 1854788 (W.D. Mo. May 21, 2012)........................................................12

**Statutes**

Minn. Stat. Ann. § 604.101 ........................................................17

Minn. Stat. § 604.101(2) ........................................................18

**Rules**

Fed. R. Civ. P. 9(b)........................................................7, 8

Fed. R. Civ. P. 12(b)(6) ........................................................2, 3, 5

Fed. R. Civ. P. 12(f)........................................................3

Fed. R. Evid. 201(b)........................................................3

16 C.F.R. § 464 ........................................................2

**Miscellaneous**

*Trade Regulation Rule on Unfair or Deceptive Fees*,
    88 Fed. Reg. 77420 (proposed Nov. 9, 2023) ........................................................2

## INTRODUCTION

*"Insanity is doing the same thing over and over again, and expecting different results"* – Albert Einstein

The Parties have already briefed, and this Court has already decided, most of the issues raised in Metronet's Second Motion to Dismiss ("the Motion") (Dkt. No. 53). Because Plaintiffs have now remedied the one deficiency in pleading previously identified by the Court, Metronet's recycled arguments should be summarily rejected. Indeed, the law of the case doctrine generally prevents the flip-flopping Metronet now encourages. Far from demonstrating the "good cause" or "unusual circumstances" required to depart from this Court's prior Order (Dkt. No. 41), Metronet's arguments have only grown weaker in the face of Plaintiffs' bolstered pleading.

With respect to the sparse new arguments in Metronet's Motion, they similarly fail. The advertisements relied on by Plaintiff Gold prove Plaintiffs' point: Metronet prominently misrepresented the price of its Internet Service to lure consumers into signing up. The existence of a fine print "taxes and fees apply" disclaimer does not cure Metronet's deception—it proves it. The case law in this Circuit is clear that such disclaimers are not exculpatory even on *summary judgment*. At a minimum, this is an issue for the trier of fact. The Motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs Jyoti Gautam Murray, Allen Perry, and Emanuel Gold ("Plaintiffs"), on behalf of themselves and all similarly situated consumers, bring this lawsuit challenging Defendant Metro Fibernet, LLC d/b/a Metronet's ("Metronet") deceptive bait-and-switch advertising of its Fiber-Speed Internet Service (the "Internet Service"). Plaintiffs allege that Metronet misleads consumers by prominently advertising sham low prices for its Internet Service through various marketing channels—including on its website, in online promotions, mailing flyers, and billboards—and then covertly tacking on a mandatory Technology Services Fee ("TSF") on consumers' bills that steeply

inflates the true cost of Metronet's Internet Service *by up to 43%. See generally,* Dkt. No. 47, Amended Class Action Complaint ("Am. Compl.") ¶¶ 3-6, 15-20. As such, Metronet's price advertisements are false. Metronet's Internet Service does not cost $29.95 (as advertised to Plaintiff Perry and Plaintiff Gold) or $49.95 (as advertised by Plaintiff Murray). Instead, the true cost of Metronet's Internet Service is actually the advertised low-price *plus* the mandatory TSF. *Id.* ¶ 3. Metronet's TSF is further misnamed and deceptive because it does not cover the cost of any "technology service"; it provides no additional value. *Id.* ¶¶ 31-34.

In recognition of the potential for deception, the Federal Trade Commission has recently banned this exact advertising practice. Specifically, the FTC has cautioned against "misleading door openers," calling such price advertisements "deceptive":

> [I]nternet service providers routinely do not include service fees, such as installation and activation fees, equipment fees, penalties for exceeding data caps, and early termination fees, in advertised prices, ***and that these fees should be considered as part of the true monthly cost of internet service that should be incorporated into advertised prices*** or prohibited when they are arbitrary or do not reflect added value.

*Id.* ¶ 28 (quoting *Trade Regulation Rule on Unfair or Deceptive Fees,* 88 Fed. Reg. 77420, 77432 (proposed Nov. 9, 2023) (to be codified at 16 C.F.R. § 464) (emphasis added)).

For years, however, Metronet's deception went unabated. By unfairly obscuring the true cost of its Internet Service in its advertisements, Metronet impedes consumers' ability to engage in fair price comparisons in the marketplace and have enticed consumers to switch internet service providers when they otherwise would not have. *Id.* ¶ 25.

## LEGAL STANDARD

### *Rule 12(b)(6)* Standard

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S.

662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp*). "[A facially plausible claim is one] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. Of Educ.,* 8 F. 4th 625, 627 (7th Cir. 2021). When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true[.]" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

    *Rule 12(f)* Standard

    A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In general, motions to strike are disfavored because they "potentially serve only to delay" the proceedings. *Heller Fin., Inc. v. Midwhey Power Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The party moving to strike a pleading under Rule 12(f) has "'the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration and unduly prejudicial.'" *Kesterke v. BCD White Inc.*, 2018 WL 3343079, at *1 (N.D. Ind. July 9, 2018).

    *Judicial Notice Standard*

    Under Fed. R. Evid. 201(b), courts "may judicially notice a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." District "courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997). "It is not acceptable for a defendant to submit

documents in support of his motion to dismiss that 'would require discovery to authenticate or disambiguate.'" *Rock v. Nat'l Collegiate Athletic Ass'n,* 2013 WL 4479815, at \*5 (S.D. Ind. Aug. 16, 2013) (quoting *Tierney v. Vahle,* 304 F.3d 734, 739 (7th Cir. 2002)).

## ARGUMENT

## I.    This Court Has Already Rejected Most of Defendant's Arguments

Metronet's recycled Motion improperly burdens the Court with arguments that the Court has already rejected. Specifically, in its prior Order on the Motion to Dismiss ("the Order") (*see* Dkt. No. 41), the Court previously rejected Metronet's arguments concerning (1) the voluntary payment doctrine; (2) Plaintiffs' unjust enrichment claim; (3) the statute of limitations of the IDSCA as to Plaintiff Murray; and (4) the striking of the consumer complaints in Paragraph 65 of the Amended Complaint. Nevertheless, Metronet raises the same arguments again, in the hopes the Court reaches a different result.

Metronet's tactic is barred by the law of the case doctrine, which "[e]stablishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *U.S. v. Williams,* 2024 WL 4475001, at \*2 (N.D. Ind. Oct. 11, 2024); *see also Cannon v. Armstrong Containers, Inc.*, 92 F.4th 688, 701 (7th Cir. 2024) (quoting *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)); *Pepper v. U.S.*, 562 U.S. 476, 506, 131 S. Ct. 1229, 1250 (2011) (defining the doctrine to "posit[ ] that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983))). The law of the case doctrine applies to a previous ruling made in the same litigation, whether by the same district judge or a different district judge. *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 571-72 (7th Cir. 2006). The

doctrine generally prevents a party from getting a "second bite at the [ ] apple." *Grede v. FCStone, LLC*, 867 F.3d 767, 775 (7th Cir. 2017).

While the law of the case doctrine is discretionary, courts are cautioned to only depart from an earlier decision because of "good reason" or "unusual circumstances." *Cannon*, 92 F.4th at 701 (internal quotation marks omitted). That might include "(1) substantial new evidence introduced after the first review, (2) an intervening change in the law, and (3) a clearly erroneous decision." *Id.*

Here, Metronet fails to establish any "good reason" or "unusual circumstance" that warrants the Court departing from its previous Order. There has been no "substantial new evidence" introduced, no "intervening change in the law", and the Court's prior Order was not "clearly erroneous." *See id.* Instead, Metronet's Motion merely attempts a do-over on issues it has already lost. This is inefficient, at best, and frivolous at worst. There is no reason for the Court to depart from its prior Order on these issues.

## II.    Plaintiff Gold States a Claim Under Rule 12(b)(6)

Plaintiff Gold alleges that he signed up for Metronet in reliance on flyers that prominently advertised a fictitiously low-price for its Internet Service. Am. Compl. ¶¶ 15-17, 59.  Plaintiff Gold includes pictures of the advertisements on which he relied, each of which demonstrates the deception. *See id.*

In a paragraph noticeably devoid of any case law, Metronet argues Plaintiff Gold's claims should be dismissed because the advertisements he relied on contained a fine print disclaimer stating, "offers do not include taxes and fees." Mot. at 2. According to Metronet, this contradicts Plaintiff Gold's allegation that the advertisement "did not advise him of the existence of a 'Tech Assure Fee'" (Am. Compl. ¶ 58) and dooms his claim as a matter of law. This is specious. Seventh

Circuit case law is clear that the existence of a fine print disclaimer generally does not cure a misleading advertisement as a matter of law. *See Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 476 (7th Cir. 2020) (Holding "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers."); *Beardsall v. CVS Pharmacy, Inc.,* 953 F.3d 969, 977 (7th Cir. 2020) ("We are skeptical of defendants' position at oral argument that an asterisk pointing to an ingredient list in fine print could save virtually any deceptive slogan").[1]

Here, the fine print does not advise consumers of the TSF or cure the otherwise deceptive price advertisement. The advertisement is designed to lure consumers in with the promise of an artificially low price, which is displayed prominently in bold and colorful font. Even if a consumer were to notice and read the fine print, the disclaimer in no way indicates that the actual price of the product is significantly higher than the price advertised. Indeed, by suggesting the price does not include "taxes and fees," Metronet leads consumers to believe that the price does not include *government-imposed* taxes and fees. No reasonable consumer would expect that the price does not include a recurring fee that represents pure profit for Metronet.

Moreover, even if fine print could cure deception (and it doesn't), the Seventh Circuit is also clear that this is not a question for the Court on a Motion to Dismiss. *See Kahn v. Walmart Inc.,* 107 F.4th 585, 604 (7th Cir. 2024) ("Even if Walmart did provide disclaimers regarding its shelf pricing, whether such disclaimers can actually dispel the deception might be a question of

---

[1]    *See also Asis Internet Servs. v. Subscriberbase Inc.,* 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010) ("[I]t is inappropriate to suggest that a subject line is not deceptive because of corrective disclaimers in the fine print of the message itself, or terms written in a hyperlinked page."); *McKee v. Audible, Inc.,* 2017 WL 7388530, at *20 (C.D. Cal. Oct. 26, 2017) (Plaintiff adequately stated claim that Audible misrepresented its cancellation and rollover policies in advertisements despite corrective disclaimer).

fact that cannot be resolved on a motion to dismiss or for summary judgment.") (citing *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019) (reversing dismissal on pleadings: "As with any question of fact, our role is limited to defining the outer boundaries of its answer—i.e., the point at which a juror could reasonably find only one way.").); *see also Metal Pro Roofing, LLC v. Cincinnati Ins. Co.,* 130 N.E.3d 653, 659 (Ind. Ct. App. 2019) ("The trier of fact should decide whether the disclaimer in this case—which appears in fine print at the bottom of the quotes—had [the] effect" of "neutraliz[ing] otherwise misleading [] language.").[2] In sum, this is a question for another day.

## III.    Plaintiff Murray and Plaintiff Perry Plead Their Claims with Particularity

Metronet again moves to dismiss Plaintiffs' Amended Complaint under Fed. R. Civ. P. 9(b), arguing Plaintiffs fail to plead their fraud-based claims with the requisite specificity. But Plaintiffs identify Metronet's misrepresentations and omissions in sufficient detail so as to give Metronet notice of the particular fraudulent misconduct, which is all that is required by Rule 9(b) at this early stage in the litigation.

In the Seventh Circuit, consumer protection claims sounding in fraud must comply with the heightened pleading requirements set forth in Rule 9(b). Fed. R. Civ. P. 9(b); *Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 738 (7th Cir. 2019) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014)).[3] This standard requires a plaintiff to "state with

---

[2]    Metronet also relies on undated Terms & Conditions document which it does not authenticate and merely attaches to its Motion to Dismiss. *See* Ex. 1. The Court should decline to take judicial notice of this document. *See* Judicial Notice Standard*, supra* at p. 3-4. Even if it were considered, a fine print disclaimer which directs consumers to even more fine print does not make Metronet's price advertisements any less misleading.

[3]    *See Barker v. Kapsch Trafficcom USA, Inc.,* 2020 WL 2832092, at *9 (S.D. Ind. June 1, 2020) (as to Indiana's Deceptive Consumer Sales Act ("IDCSA")); *Cleveland v. Whirlpool Corp.,* 550 F. Supp. 3d 660, 674 (D. Minn. 2021)(as to Minnesota's Consumer Fraud Act ("MCFA")); *Ali*

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Critically, this "particularity requirement relaxes when a plaintiff 'lacks access to all facts necessary to detail [her] claim.'" *Moore v. Soc. Coaching-Credit Repair, LLC,* 2024 WL 1929431, at *2 (N.D. Ind. May 1, 2024) (quoting *Corley v. Rosewood Care Ctr.,* 142 F.3d 1041, 1051 (7th Cir. 1998)). At bottom, the purpose of Rule 9(b) "is to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Inv. Servs., Inc.,* 191 F.3d 777, 783 (7th Cir. 1999); *see also Cleveland,* 550 F. Supp. 3d at 673-74 ("The primary purpose of this particularity requirement is to enable a defendant to respond and to prepare a defense to the fraud claim."). A complaint generally satisfies Rule 9(b) by alleging the "who, what, when, where, and how" of the defendant's misconduct. *Vanzant,* 934 F.3d at 738. Plaintiffs' well-pled allegations more than meet this standard.

Specifically, Plaintiffs allege Metronet uniformly and prominently advertises an artificially low price for its Internet Service (that does *not* include the TSF), enticing consumers to switch internet service providers based on the low-advertised price. Am. Compl. ¶ 24. But Metronet's price representations are deceptive and misleading because Metronet adds a mandatory TSF to *every customer's account,* such that the true cost of its Internet Service is *not* the flat, low-price as advertised, but rather, the advertised flat, low-price *plus* the mandatory TSF, which has ranged from $9.95 to $12.95 per month over time—***up to 43%*** of the advertised price for the internet. *Id.* ¶¶ 4, 20-21, 24. Indeed, the TSF is a typical "junk fee" that merely represents a component of the true cost of Metronet's Internet Service. *Id.* ¶ 24.

---

*v. Allstate Northbrook Indemnity, Co.,* 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024) (as to Kentucky's Consumer Protection Act ("KCPA")).

Why Metronet strategically chooses not to just advertise the cost of its Internet Service as the advertised low-price *plus* the TSF is simple: Metronet wants to catch consumers' attention in its marketing materials by advertising the lowest possible price, gain an unfair upper hand on competitors by obstructing consumers' ability to engage in true price comparisons, and then commit customers to a contract upon which they later learn that the cost of the Internet Service is actually higher than represented in its advertisements given the mandatory imposition of the TSF. *Id.* ¶¶ 3, 7, 25. This is a classic bait-and-switch.

The Seventh Circuit has recognized that similar bait-and-switch pricing schemes—when a retailer induces a sale by initially advertising an artificial "lower or partial price without disclosing the total cost"—are deceptive and misleading to reasonable consumers, "even [when a] consumer discovers the price discrepancy before completing a transaction." *See Kahn,* 107 F.4th at 601 (reversing lower court's dismissal of consumer protection claims alleging that Walmart's advertised lower cost to consumers for goods and then inflated by mandatory charges at the register misled consumers even when they discovered the higher price before completing the transaction).[4]

In its prior Order, the Court held that Plaintiffs failed only to satisfy the Rule 9(b) heightened pleading standard in identifying the "where" the alleged misconduct occurred. *See* Dkt. No. 41 at 5. In so holding, the Court held that "the place 'where' the alleged fraud took place is

---

[4]    Many courts have allowed similar bait-and-switch pricing claims to proceed on motions to dismiss. *See e.g., Watson v. Crumbl LLC,* 736 F. Supp. 3d 827, 841-42 (E.D. Cal. 2024) (denying motion to dismiss where plaintiffs alleged defendants concealed the true price of their products because the service fee was not disclosed until the final checkout screen and finding defendants' "failure to transparently disclose the Service Fee [is] concerning" and "deceptive"); *Nail v. Lens.com,* 2024 WL 4477012, at *4 (D. Nev. Oct. 11, 2024) (holding similarly); *Hall v. Marriott Int'l, Inc.,* 2020 WL 4727069, at *8 (S.D. Cal. Aug. 14, 2020) (holding "Defendant's initial advertising of a low price not including the resort fee is what was deceptive" and even where resort fee was disclosed prior to the consumer finalizing a hotel reservation, such fee could be misleading where defendant represented that certain amenities are "complementary" but those amenities are actually encompassed within what the consumer pays for the resort fee).

within Murray and Perry's knowledge and control" and as such, conflicted with their allegations made on "information and belief." *Id.* The Amended Complaint adequately cures this deficiency because Plaintiffs' allegations as to "where" Metronet's alleged misrepresentations were made are no longer made "upon information and belief," but rather, based upon their own recollection. Plaintiff Murray alleges she "was exposed to Defendant's representations regarding its Fiber-Speed Internet Service via flyers that were mailed by Metronet to Plaintiff Murray's apartment rental address in Rochester, Minnesota" and "on a billboard located in Rochester." Am. Compl. ¶ 37. Plaintiff Perry alleges he was "first exposed to Defendant's misrepresentations regarding its Fiber-Speed Internet Service via an online promotion" he was exposed to when he "used Google to research internet providers in his area from his home in Lexington, Kentucky." *Id.* ¶ 46. This search led Perry to "view[] the online promotion price of $29.95 on Metronet's website." *Id.* Thus, the places "where" each Plaintiff was exposed to Metronet's deceptive advertising are clearly alleged.

Once again, Defendant argues Plaintiff Perry hasn't provided enough detail as to "the exact type of 'online promotion' he claims to have seen." Mot. at 10. But the Court has already accepted the "what" of Plaintiff's allegations—"misleading advertisements for internet services that intentionally excluded mandatory monthly charges" to be sufficient. *See* Dkt. No. 41 at 4; *see* Am. Compl. ¶ 46 (alleging Plaintiff Perry "viewed the online promotional price of $29.95 on Metronet's website" and "recalls that the promotion did not advise him of the existence of the [TSF]"). And critically, the Court already held it "is not convinced that Rule 9 requires identification of the *exact* advertisements as a prerequisite to stating a fraud claim" and Metronet cites no case compelling a different result. *See* Dkt. No. 41 at 4 (emphasis in original) (citing *Rubio v. Polaris, Inc.,* 2022 WL 13909757, at *4 (S.D. Ind. Oct. 24, 2022) (finding that a plaintiff stated a fraud claim when she

alleged that she saw advertisements online, from her home in Illinois, "while making an 'on-line rental purchase," and relied on those advertisements when renting a dangerous machine which led to injury); *Cleveland,* 550 F. Supp. 3d at 674-75 (concluding fraud claim was pleaded with particularity where the plaintiff alleged the defendant made fraudulent representations "on its website, in marketing materials, in warranties, in user manuals, on the labeling of the packaging of the dishwashers, through employees, and through authorized retailers")). Metronet's argument is especially eyebrow-raising given that Plaintiff Perry alleges he was exposed to the price misrepresentation *on Metronet's own website.* Am. Compl. ¶ 46. Metronet presumably has knowledge of the advertisements displayed on its own website.

Lastly, Defendant takes issue with Plaintiff Perry's allegations as to "when" he was exposed to Metronet's deceptive advertising. Mot. at 10. But the Court already accepted Plaintiff Perry's allegations that he "was exposed to advertisements on or around April 2024" to be sufficient. Dkt. No. 41 at 4. The fact that the First Amended Complaint further alleges Plaintiff Perry was "first exposed" to Metronet's misrepresentations "via an online promotion between January 2024 – April 2024" does not defeat the specificity of his allegations. Indeed, Plaintiff Perry was exposed to Metronet's online promotion *multiple times* "after comparing the services offered by similar service providers" and before eventually deciding to sign up with Metronet in April 2024. Am. Compl. ¶¶ 44, 46-47. Allegations of exposure to misrepresentations made in advertisements occurring over the span of a few months, even if "a broad period of time," are sufficient to plead the "when" under Rule 9(b). *See e.g., Cleveland,* 550 F. Supp. 3d at 674-75 (allegations sufficient where "Cleveland alleges that Whirlpool made the material representations or omissions when Cleveland and putative class members researched and purchased the Dishwashers, when Cleveland and the putative class members made their warranty claims, and continuously through the

applicable class periods"); *Bosch v. Bayer Healthcare Pharm., Inc.,* 13 F. Supp. 3d 730, 744-46 (W.D. Ky. 2014) (patients' fraud-based claims were sufficiently pled under Rule 9(b) where they alleged they saw commercials within a few months" and "on or around" the date of device insertion); *Crawford v. AriZona Beverages USA LLC,* 2023 WL 1100260, at *8 (S.D. Ill. Jan. 30, 2023) (consumer fraud claims pled with particularity where "Plaintiff's purchases and reading of the Label [were] made between January 2021 and January 2022").[5]

In sum, Metronet's 9(b) arguments ought to be rejected.

## IV.    As the Court Previously Held, None of the Plaintiffs Claims Are, At Least at this Stage, Barred by the Voluntary Payment Doctrine

Metronet *again* argues that each of Plaintiffs' claims are barred pursuant to the voluntary payment doctrine because Plaintiffs supposedly continued to pay the TSF even after they were made aware of it. Mot. at 1-13. But as this Court previously held in rejecting this argument before, "[w]hether Metronet's representations were indeed fraudulent remains to be seen" such that "application of the voluntary payment rule is not an appropriate basis for dismissal" given "this early stage" and the "limited facts before the Court." Dkt. No. 41 at 8.

Indeed, the voluntary payment doctrine does not apply "where the payee was induced by fraud or improper conduct." *Lawson v. First Union Mortgage Co.,* 786 N.E.2d 279, 284 (Ind. Ct. App. 2003) (voluntary payment doctrine did not apply where plaintiff paid a documentation fee

---

[5]    The two cases Defendant cites where courts held a four-month period was insufficient to satisfy Rule 9(b) are factually distinguishable. For example, in *Doehla v. Wathne Limited, Inc.,* 1999 WL 566311, at *17 (S.D.N.Y. Aug. 3, 1999), the fraud claim wasn't adequately pled where it lumped the defendants "together as a group" and failed to allege which defendant "said what, how the statement was said or when it was said." And in *Winsler v. Ameriquest Mortg. Co.,* 2012 WL 1854788, at *3 (W.D. Mo. May 21, 2012), the alleged misconduct did not involve consumer fraud claims or misrepresentations made in advertisements continually over a period of time, but rather, asserted a fraudulent misrepresentation claim alleging specific statements made via telephone by the loan modification department).

for her mortgage "without questioning [ ] the fee's validity" and fee was prohibited by the IDCSA); *see e.g., In re O'Flynn,* 654 B.R. 296, 334 (Bankr. SD. Ind. 2023) (exception applied where "Ocwen engaged in fraudulent or improper conduct in requesting payment" in connection with bankruptcy services). Kentucky law holds similarly. *See Helton v. Am. Gen. Life Ins. Co.,* 946 F. Supp. 2d 695, 713 (W.D. Ky. 2013) (stating "a party cannot . . . recover money voluntarily paid with a full knowledge of all the facts, and ***without any fraud,*** . . .") (citations omitted) (emphasis added). Minnesota courts also agree. *See McBrady v. Monarch Elevator Co.,* 113 Minn. 104, 106 (1910) ("[T]his was not a voluntary payment. A payment induced by the fraud of the payee may be recovered."). Here, Plaintiffs allege Metronet induced Plaintiffs to pay the TSF through an improper bait-and-switch scheme. In light of this deception, the doctrine categorically does not apply.

Moreover, the applicability of this affirmative defense is a fact issue. As numerous courts have recognized, determining whether the voluntary payment doctrine applies "is better left to consideration on the merits, not this pleadings stage." *In re O'Flynn,* 654 B.R. at 334. *See e.g., Lott v. Louisville Metro Gov't,* 2021 WL 1031008, at *6-7 (W.D. Ky. Mar. 17, 2021) (denying summary judgment on the basis of voluntary payment doctrine where there was "a genuine issue of material fact about whether Plaintiff had 'full knowledge of all the facts which render the demand illegal' when he paid his fees"); *Helton,* 946 F. Supp. 2d at 713-14 (holding similarly at summary judgment stage). Defendant cites no authority for the contraposition. Thus, the Court should once again find this premature affirmative defense fails.[6]

---

[6]    In a footnote, Defendant cites a string of cases for the general proposition that persons are "presumed" to understand the documents they sign. Mot. at 12 n.3. But the duty to read principle is not a defense where, as here, fraud is alleged. *See Park 100 Investors, Inc. v. Kartes,* 650 N.E.2d 347, 349 (Ind. Ct. App. 1995) (recognizing the long-held exception to the duty to read principle

### V.    Plaintiff Murray's Indiana-Law Claim Falls Within the Statute of Limitations

Metronet next argues that Plaintiff Murray's claim is barred by Indiana's statute of limitations. This Court already denied Metronet's attempt to dismiss Plaintiff Murray's IDSCA claim, spending well over a page discussing its rationale in detail. *See* Dkt. No. 41 at 6-7. Specifically, the Court held that "[w]hile it appears that the statute of limitations may have lapsed, the Court will defer making such a finding at the pleading stage and in the absence of an established timeline of events." *Id.* The parties are still at the pleading stage and there has been no further establishment of a "timeline of events" beyond Defendant's conjecture in its motion. Indeed, the "timeline" provided in Defendant's present motion is substantively identical to the one its initial motion.

Further, Defendants arguments ignore the new allegations in Plaintiffs' Amended Complaint which include that Plaintiff Murray did not discover the TSF fee until she received her monthly bill, "and even then, she did not know why she was being charged it or what the fee was for." Am. Compl. ¶ 40. Indeed, Plaintiff Murray alleges Metronet's conduct amounted to fraudulent concealment. *See id.* ("Indeed, Metronet fraudulently concealed the nature of the fee by describing it as a "Technology Services Fee," when in fact, no "service" was being provided and it instead represents disguised profit."). Courts in this circuit have held that "[f]raudulent concealment tolls the statute of limitations when a defendant conceals from the plaintiff material facts that prevent the plaintiff from discovering a potential cause of action." *In re Cook Med., Inc. IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.,* 2020 US Dist. LEXIS 238991, at *5 (S.D. Ind. Nov. 13,

---

"where one employs misrepresentation to induce a party's obligation under a contract," in which case "one cannot bind the party to the terms of the agreement"). And as discussed above, whether Metronet's misrepresentations regarding the TSF were fraudulent raises an issue of fact that cannot be resolved at the pleading stage.

2020); *Lyons v. Richmond Cmty. Sch. Corp.,* 19 N.E.3d. 254, 260 (Ind. 2014). Plaintiffs' Amended Complaint alleges Metronet "obscures the true nature of the fee." Am. Compl. ¶ 6. Indeed, contrary to its name, there is no "service" provided in exchange for the "Technology Services Fee". Instead, the fee purportedly provides what reasonable consumers already understand to be part of any internet service: working equipment and, when the equipment fails, service to fix it. See id.

Finally, even if later at summary judgment, this court finds that this claim is time-barred as to Plaintiff Murray, Metronet has already conceded the claim survives as to Plaintiffs Gold and Perry. The Motion fails.

## VI.    As the Court Previously Held, Plaintiffs State an Unjust Enrichment Claim

This Court already denied Metronet's attempt to dismiss Plaintiffs' unjust enrichment claim. (Dkt. No. 41 pp. 8 – 9) ("[A]t this early stage, Plaintiffs' unjust enrichment claim is not subject to dismissal"). Plaintiffs' unjust enrichment claim was not substantively changed by the Amended Complaint and Metronet has not provided the Court with any reason to change its mind.

In any event, the Motion still fails. Metronet again argues that "[P]laintiffs entered into a valid and enforceable contract with Metronet when signing up for its internet service" because Plaintiffs were put on "notice of the TAF in the Terms and Conditions." Mot. at 16. As before, however, the existence of a contract does not bar an unjust enrichment claim when, as here, the plaintiff alleges a fee was paid and nothing of value was provided in return.[7] *See Coppolillo v. Cort,* 947 N.E.2d 994, 998 (Ind. Ct. App. 2011)  (holding "the existence of a contract, in and of itself, does not preclude equitable relief which is not inconsistent with the contract."); *see also Celadon Trucking Servs., Inc. v. Wilmoth,* 70 N.E.3d 833, 845 (Ind. Ct. App. 2017) (affirming

---

[7]    Notably, there is nothing in the Amended Complaint that pleads or relies on the existence of an enforceable contract. In any event, even assuming an enforceable contract between the Parties exists, it does not defeat the claim.

15

court's order granting summary judgment to the class on both the breach of contract claim and the unjust enrichment claim).

Indeed, Plaintiffs allege that they paid a fee and received nothing in return. Specifically, Plaintiffs allege the TSF was to "cover any service calls or repairs to all Metronet-owned equipment." Am. Compl. ¶ 31. But none of the Plaintiffs made any service calls or received any repairs to their Metronet-owned equipment. Am. Compl. ¶¶ 41, 50, 62. When a plaintiff pays a fee and receives nothing of value in return, this is a textbook example of unjust enrichment. *See generally Coppolillo,* 947 N.E.2d at 997 ("To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."). Just the Court recognized previously, the claim survives.

## VII.    Plaintiffs State a Claim for Negligent Misrepresentation

Plaintiffs also adequately state a claim for negligent misrepresentation under Minnesota and Kentucky law[8], which require Plaintiffs to plead that (1) Metronet had a pecuniary interest in its course of business; (2) Metronet owed a duty of care to Plaintiffs; (3) Metronet supplied false information to Plaintiffs in guidance of its business transactions; (4) Plaintiffs justifiably relied on this false information; and (5) Metronet failed to exercise reasonable care in communicating the information. *See Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.,* 88 F. Supp. 3d 985, 1013 (D. Minn. 2015) (citations omitted).[9] Plaintiffs allege that Metronet negligently misrepresented the cost of its Internet Service as a fictitiously low price by omitting the TSF from the total cost of the Internet Service in its advertising materials and that Plaintiffs justifiably relied

---

[8]    Plaintiffs decline to pursue this claim under Indiana law.

[9]    *See also Kennedy v. Prime Hydration, LLC,* 2025 WL 697674, at *5 (W.D. Ky. Mar. 4, 2025) (requiring similar elements under Kentucky law).

on these misrepresentations in deciding to sign up for the service at the represented cost. Am. Compl. ¶¶ 127-32. As a direct result of Defendant's misrepresentations, Plaintiffs suffered actual damages in the amount of TSF fees paid in excess of the cost for the Internet Service as represented. *Id.* ¶ 134.

Defendant argues for dismissal because Plaintiffs' claims are rooted in an omission, not an affirmative false statement, as required by Kentucky law. Mot. at 16 n.4. This argument fails because it is belied by the clear allegations in the Amended Complaint. As discussed above, Plaintiffs adequately allege that Metronet negligently *misrepresented* the cost of its Internet Service as a fictitiously low price by omitting the TSF from the total cost of the Internet Service in its advertising materials. Am. Compl. ¶¶ 127-31. Thus, the alleged false misrepresentation is Metronet's advertised artificially low price for its Internet Service *without* the inclusion of the TSF. Negligent misrepresentation claims can stand even where omissions are alleged alongside actionable misrepresentations. *See e.g., Kennedy,* 2025 WL 697674, at *3-5 (allowing negligent misrepresentation claim to proceed with allegations that "the label on the back of the can that lists the caffeine content without a more detailed warning are the fraudulent statements" and "the caffeine content does not warn consumers that consuming this level of caffeine is dangerous for children").

As to Minnesota law, Metronet confusingly cites Minn. Stat. Ann. § 604.101 to argue that Plaintiffs cannot assert a negligent misrepresentation claim where they have not alleged Metronet "intentionally or recklessly failed to disclose" the TSF. Mot. at 16. n.4. Defendant's argument invokes the wrong rule, which applies only to "claim[s] by a buyer against a seller for harm caused *by a defect in the goods sold* or leased, or for a *misrepresentation relating to the goods sold* or leased." Minn. Stat. § 604.101(2) (emphasis added); *id.* at subd. 4 ("A buyer may not bring a

common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly."). But Plaintiffs' action is not one for products liability, nor does it involve any "goods" at all. Instead, Plaintiffs allegations arise from Metronet's deceptive advertising of the true cost of its Internet *Service.* This argument also fails.

To the extent Defendant suggests Plaintiffs cannot bring a negligent misrepresentation claim alongside intentional misrepresentations claims, Plaintiffs can bring these claims in the alternative at the pleading stage. *See e.g., Acute Care,* 88 F. Supp. 3d at 995 (allowing claims for negligent misrepresentation, Minnesota's Consumer Protection Act, and common law fraud to proceed simultaneously on a motion to dismiss).

## VIII.  The "Anonymous Complaints" and Complaints to Government Agencies Should Not Be Stricken

The Court already declined to grant Metronet's first attempt to strike the customer reviews in Plaintiffs' complaint. *See* Dkt. No. 41 at 9. It should do the same in its second attempt. The Amended Complaint includes the same customer reviews included in the initial complaint, but via Exhibit A adds publicly available complaints submitted to government agencies in states that Defendant operates in. As before, Metronet argues that the customer reviews in Paragraph 65 of the Amended Complaint should be stricken because they are "posted anonymously, ostensibly by non-parties." Mot. at 19. Metronet cannot make the same argument regarding the complaints attached in Exhibit A because Metronet itself has produced these complaints in discovery and is well aware of the identity of these customers. Instead, Metronet argues that somehow the complaints in Exhibit A "provide no further support for Plaintiffs' claims and are irrelevant." *Id.* at 20. This conclusory argument doesn't stand up to even *de minimis* scrutiny.

First, these are factual allegations and complaints related to Metronet's own practices and statements, which Metronet will have a chance to address and refute in this case. Second, these

reviews and complaints do not raise new claims against Metronet but are merely examples demonstrating that Plaintiffs' experiences are not outliers and that Metronet has knowledge that its practice deceives consumers. The reviews included in Paragraph 65 of the Amended Complaint and Exhibit A were not chosen at random—they deal with the exact same fees, practices, and complaints in this case and demonstrate that Metronet has known that their customers have felt deceived by them for some time due to the assessment of the TSF.

In sum, Plaintiffs' allegations in Paragraph 65 and the complaints included in Exhibit A are not so unrelated to their claims, prejudicial, or unworthy of consideration, that the Court must strike them from the Amended Complaint. Instead, Plaintiffs' allegations and attachment concerning online reviews and complaints to government agencies of Metronet's services adds valuable context to their claims. Through their inclusion, Plaintiffs give context to their class allegations and their claims that this practice misleads the reasonable consumer.  The Motion fails.

## CONCLUSION

For the foregoing reasons, the Court should deny Metronet's Motion to Dismiss.


Dated: June 12, 2025                    Respectfully submitted,

                                        /s/ *Sophia G. Gold*
                                        **KALIELGOLD PLLC**
                                        Sophia G. Gold (*pro hac vice*)
                                        490 43rd Street, No. 122
                                        Oakland, California 94609
                                        Tel: (202) 350-4783
                                        sgold@kalielgold.com

                                        Jeffrey D. Kaliel
                                        1100 15th Street NW, 4th Floor
                                        Washington, D.C. 20005
                                        Tel: (202) 350-4783
                                        jkaliel@kalielpllc.com

**JENNINGS & EARLEY PLLC**
Tyler B. Ewigleben; Bar No. 36450-49
Christopher D. Jennings
500 President Clinton Avenue
Suite 110
Little Rock, AR 72201
Telephone: (317)-695-1712
tyler@jefirm.com
chris@jefirm.com

*Attorneys for Plaintiffs*