UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JYOTI GAUTAM MURRAY, ALLEN PERRY, and EMMANUEL GOLD on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

METRO FIBERNET, LLC d/b/a METRONET,

    Defendant.

Case No. 3:24-cv-00131-MPB-CSW

**METRONET'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, TO STRIKE
<u>CERTAIN ALLEGATIONS IN THE AMENDED COMPLAINT</u>**

One need not be Albert Einstein to understand the shell game strategy Plaintiffs are pursuing in this lawsuit:

- Step 1 – File a fraud lawsuit caveated with "information and belief" allegations based on a purported omission in advertisements that the Plaintiffs claim to have seen but cannot specifically identify (although curiously Plaintiffs claim to recall clearly that the advertisements did not disclose the Tech Assure Fee (the "TAF")).

- Step 2 – While Metronet's Motion to Dismiss is pending, aggressively pursue discovery to try to obtain facts that can be used to back-fill holes in the Complaint including trying to obtain copies of every advertisement that Metronet used during the class period.

- Step 3 – After this Court grants the Motion to Dismiss on Plaintiffs' advertising-based fraud claims, use information obtained in discovery (which Metronet submits should not have taken place at all while the Motion to Dismiss was pending), and add a new Named Plaintiff and a new legal theory to try to cobble together an amended complaint that can survive a second Motion to Dismiss.

- Step 4 – In the response to the Motion to Dismiss, improperly attempt to change the legal theory from one of omission to one of inadequate disclosure and argue that this Court need not even address Metronet's arguments based on an ill-founded "law of the case" argument; simultaneously attempting to press forward aggressively with fact discovery in a hope that, by the time the Motion to Dismiss the Amended Complaint is decided, they will have obtained additional discovery to shore up their claims.

This fire/ready/aim approach to litigation flies in the face of Rule 9(b) and should not be countenanced. For the reasons set forth below, the Amended Complaint should be dismissed, with prejudice.[1]

1. **Plaintiff Gold Fails to State a Claim.**

In the Amended Complaint, Plaintiffs – including new plaintiff Emanuel Gold – alleged that this was a straightforward omission case, *i.e.* that Metronet "did not advise [Plaintiffs] of the existence of the [TAF]." (Am. Compl. ¶ 58.) In its Motion, Metronet demonstrated that Plaintiff Gold failed to state a claim because the advertisements on which his claim is based not only specifically advised him that the advertised price did "not include taxes and fees," but also made clear that the offer was "subject to Customer's compliance with Metronet's Terms of Service," which in turn expressly state that "[t]he monthly [TAF] is required to receive [Metronet's] Broadband Services …." (Ex. 1, Terms and Conditions, § 9 (emphasis added).) Thus, Plaintiff Gold's omission claim that he was not advised that a TAF would be charged fails based on the advertisements he includes in the Amended Complaint.

---

[1] Plaintiffs' claim that all of the arguments in Metronet's Motion are barred by the "law of the case" doctrine is incorrect. Despite claiming that this Court's ruling on a Motion to Dismiss only required Plaintiffs to cure a "minor defect in pleading," (*see LaCrue v. Vexus Fiber, LLC*, No. 3-24-cv-02842-L, Dkt No. 25 at 1 (N.D. Tex. Apr. 25, 2022)), Plaintiffs have (i) added a new plaintiff, (ii) added a new claim (for negligent misrepresentation), and (iii) made significant modifications to the allegations of the existing plaintiffs. (*See, e.g.*, Am. Compl. ¶¶ 53-64, 124-135.) Against this backdrop, Metronet's Motion to Dismiss Plaintiffs' Amended Complaint is not a "do-over," but rather responds to a substantially modified Amended Complaint. Accordingly, this Court should dismiss Plaintiffs' "law of the case" argument out of hand. But, even if Metronet's arguments were already rejected by this Court (which they were not), Metronet is *required* to set forth the same or similar arguments as to the Amended Complaint to preserve these arguments on appeal. *See, e.g.*, *Wheeler v. Hronopoulos*, 891 F.3d 1071, 1073 (7th Cir. 2018) ("[f]ailing to bring an argument to the district court means that you waive that argument on appeal.").

Plaintiffs' response is to attempt to pivot to an entirely new legal theory – that the TAF was disclosed, but the *disclosure* was inadequate. Plaintiffs *now* argue that the "fine print" does not "cure the otherwise deceptive price advertisement" and "the disclaimer in no way indicates that the actual price of the product is significantly higher than the price advertised." (Dkt No. 61 at 6.)

As an initial matter, Plaintiffs' desperate attempt to change their legal theory through an argument in a brief is improper. *See, e.g.*, *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") Plaintiffs should defend the legal theory they have pled, or they should ask for leave to amend their complaint again; they cannot defend the Amended Complaint on a legal theory that is not pled.

At any rate, even under this new theory, Plaintiff Gold's claims fail. In support of their new inadequate disclosure argument, Plaintiffs cite to a handful of cases to argue that it is a fact question as to whether Metronet's advertisements put consumers on sufficient notice of the TAF. (Dkt No. 61 at 6.) However, these cases are inapposite. For example, in *Bell v. Publix Super Markets*, the Seventh Circuit analyzed a list of ingredients on the back of a product's packaging. 982 F.3d 468, 476 (7th Cir. 2020). In *Beardsall v. CVS Pharmacy, Inc.*, the Seventh Circuit analyzed defendant's statement that a product was allegedly mislabeled as 100% pure aloe vera. 953 F.3d 969, 977 (7th Cir. 2020). These alleged misrepresentations in *Bell* and *Beardsall* are fundamentally different than the alleged misrepresentation here because the veracity of the disclosure could not be measured by looking at the disclosure itself. Put another way, both advertisements cited by Gold show that the advertised price contained an asterisk, and that the asterisk directs consumers to read additional disclosures (*id.*) – in particular, Metronet's Terms

and Conditions, which outline the TAF and related fee, (*see* Dkt No. 52-1 § 9) – and also disclose that "[o]ffers do not include taxes and fees," (Am. Compl. ¶¶ 55, 57). Based on the face of the advertisements that Plaintiff Gold includes in the Amended Complaint, Plaintiff Gold's claim that he was not sufficiently advised is contradicted by his own allegations and warrants dismissal.

2. **Plaintiffs Murray and Perry Fail to Plead Their Claims with Particularity.**

Metronet demonstrated in its Motion that the claims asserted by Plaintiffs Murray and Perry still fail to meet the heightened pleading requirement of Rule 9(b). In response, Plaintiffs argue they "identify Metronet's misrepresentations and omissions in sufficient detail so as to give Metronet notice of the particular fraudulent misconduct" and the Amended Complaint adequately alleges "where" Plaintiffs were exposed to Metronet's allegedly deceptive advertisements. (Dkt No. 61 at 7-12.)

Not so. With respect to Plaintiff Murray, she alleges that, by removing her "upon information and belief" caveat, she cured any pleading deficiencies. (*Id.*) However, this ignores Metronet's argument in its Motion to Dismiss entirely – by amending her allegations, Plaintiff Murray now pleads that, *to the best of her recollection*, she was exposed to Metronet's alleged misrepresentations in or around March 2022 in Rochester, Minnesota. (Am Compl. ¶ 37.) As Metronet pointed out in its Motion, this is a distinction without a difference. Plaintiff Murray's continuing attempt to caveat her fraud claims does not meet the Rule 9(b) standard.

With respect to Plaintiff Perry, Plaintiffs argue that the Court has already determined that Plaintiff Perry's allegations satisfied the pleading requirements of Rule 9(b), except for addressing where Plaintiff Perry was exposed to the alleged misrepresentations. (Dkt No. 53 at 9-10.) Plaintiffs are incorrect; they ignore the fact that, in the Amended Complaint, they affirmatively made Plaintiff Perry's allegations *more* ambiguous. In the Amended Complaint, Plaintiff Perry

alleges he was "first exposed to [Metronet's] representations regarding its Fiber-Speed Internet Service via an online promotion *between January 2024 – April 2024*"; in his original Complaint he alleged he was exposed "*around April 2024*." (*Compare* Compl. ¶ 38 (emphasis added), *with* Am. Compl. ¶ 46 (emphasis added).) This Court's prior ruling was based on the allegations in the original Complaint, not the Amended Complaint. In effect, Plaintiffs seeks to use a previous ruling based on different allegations to argue that the Court has already decided that Plaintiff Perry's allegation that he was exposed to Metronet's alleged misrepresentations and omissions over a four-month period satisfied Rule 9(b). Such argument is nonsensical. Further, Plaintiffs argue in their Response that Plaintiff Perry was "exposed to Metronet's online promotion *multiple times*." (Dkt No. 61 at 11 (emphasis original).) However, Plaintiff Perry alleges that he was exposed only once. (Dkt No. 47 at ¶ 46 (referencing only a single online advertisement.).) In sum, Plaintiff Perry has not adequately identified "when" he viewed the online promotional price on Metronet's website, thus failing to meet the requirements of Rule 9(b).

Plaintiffs' reliance on *Kahn v. Wal-Mart Inc.*, 107 F.4th 585 (7th Cir. 2024), is misplaced. In *Kahn*, the plaintiff alleged that the defendant's in-store shelf pricing did not always reflect the price to be charged at the register, and customers did not learn of the final price until checking out at the register. *Id.* at 592. The Court reasoned that "[b]ait-and-switch pricing schemes like the one alleged here lead to injuries that consumers 'cannot reasonably avoid,' which come 'in the form of higher prices and search costs.'" *Id.*

The facts here are vastly different. Unlike the customer in the grocery store who finds price discrepancies at the checkout register where it would be difficult and time-consuming to abort the purchase and research prices at other stores, Plaintiffs were made aware of the TAF *before* their service was installed and could have canceled installation if they found the TAF

unacceptable. (*See* Dkt No. 52-2 (Murray Summary E-mail), Dkt No. 52-5 (Perry Summary E-Mail).) Moreover, Plaintiffs acknowledge that they already had "compared the services offered by similar service providers" prior to contracting with Metronet (*see* Am. Compl. ¶¶ 38, 47, 59), so a price comparison once they were aware of the TAF would not have been time- or cost-prohibitive.

### 3. Plaintiffs Fail To State A Claim For Negligent Misrepresentation.

As an initial matter, Plaintiffs do not dispute that the negligent misrepresentation claim brought on behalf of an Indiana subclass should be dismissed, as Plaintiffs concede they do not bring a negligent misrepresentation claim under Indiana law. (Dkt No. 61 at 16, n.8.)

Next, by Plaintiffs' own admission, their negligent misrepresentation claim fails under Kentucky law because it is based on an alleged omission. *See Republic Bank & Tr. Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 714 (W.D. Ky. 2010), aff'd, 683 F.3d 239 (6th Cir. 2012) (explaining that, under Kentucky law, "a mere omission will not" support a negligent misrepresentation claim). Plaintiffs explicitly state that the ***sole basis*** for their negligent misrepresentation claim is the omission of the TAF from the total cost of internet service:

> "Plaintiffs adequately allege that Metronet negligently misrepresented the cost of its Internet Service as a fictitiously low price ***by omitting the [TAF]*** from the total cost of the Internet Service in its advertising materials."

Dkt No. 61 at 17 (citing Am. Compl. ¶¶ 127-31) (emphasis added); *see also id.* at 7 ("[b]ut Plaintiffs identify Metronet's…***omission***."); Am. Compl. ¶¶ 37, 46, 58 (alleging the advertisements upon which each Plaintiff purportedly relied "did not advise [them] of the existence of a 'Technology Services Fee' or 'Tech Assure Fee.'"). Because Kentucky law does not allow for negligent misrepresentation claims based in omission, Plaintiffs' claim for negligent misrepresentation under Kentucky law should be dismissed.

Plaintiffs' negligent misrepresentation claim also fails under Minnesota law.[2] Under Minnesota law, "[a] buyer may not bring a common law misrepresentation claim against a seller ***relating to the goods sold*** or leased unless the misrepresentation was made intentionally or recklessly." MINN. STAT. ANN. § 604.101 (West) (emphasis added). Plaintiffs acknowledge that their negligent misrepresentation claim "relat[es] to the goods sold" by alleging that Metronet represents the TAF "is for the purpose of 'cover[ing] any service calls or repairs to all Metronet-owned equipment[.]'" (Am Compl. ¶ 31.) Thus, Plaintiffs' claim for negligent misrepresentation under Minnesota law fails because they failed to allege Metronet "intentionally or recklessly" misrepresented the TAF. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1145 (D. Minn. 2016) (finding that § 604.101 barred the plaintiff's claim for negligent misrepresentation because he cannot simultaneously allege an "intentional or reckless" misrepresentation and a "negligent misrepresentation.").

4.      **Plaintiff Murray's Indiana Claims Are Time-Barred.**

In response to Metronet's argument that her Indiana claims are time-barred, Plaintiff Murray argues first that the Court has already denied Metronet's attempt to dismiss her Indiana claim, and second, that there has been no further establishment of a "timeline of events" beyond Metronet's conjecture. (Dkt No. 61 at 13.) Not so. Plaintiff Murray now alleges that she "did not discover the [TAF] until she received her monthly bill reflecting the fee, and even then, she did not know why she was being charged it or what the fee was for." (Am. Compl. ¶ 40.) However,

---

[2] Even if pled in the alternative, Plaintiffs' claims for negligent misrepresentation under Minnesota law fail because Plaintiffs did not plead their allegations with sufficient particularity under Rule 9(b). *See Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity"); *see also*, *supra*, Section 3.

on March 25, 2022, Plaintiff Murray represented that she had "received, read, and agree[d] to the Terms and Conditions" and she understood and agreed "to the Terms and Conditions of this Service Order, ***including the Additional Terms of Service*** and authorize and approve installation," (Dkt. No. 52-3 at 2 (emphasis added)), which contained a description of the TAF, (Dkt No. 52-1 § 9). Regardless of whether Plaintiff Murray knew "why she was being charged [the TAF] or what the fee was for," Plaintiff Murray represented to Metronet that she had reviewed and understood the Terms and Conditions, which included a description of the TAF – she cannot now argue that she was not put on notice of the TAF to circumvent the two-year statute of limitations. *See e.g.*, *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. App. 1997) ("[u]nder Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it"); *see also* Dkt No. 53 at 12, n. 3.

In their Response, Plaintiffs argue generally that the "duty to read" principle is not a defense where fraud is alleged. (Dkt No. 61 at 13, n.6.) However, Plaintiff Murray represented to have read *and understood* Metronet's Terms and Conditions – which outline the TAF – when signing up for Metronet's service. Specifically, Plaintiff Murray agreed to Metronet's Terms and Conditions on March 25, 2022, representing that she had "received, read, and agree[d] to the Terms and Conditions" and she understood and agreed "to the Terms and Conditions of this Service Order, ***including the Additional Terms of Service*** and authorize and approve installation," (Dkt. No. 52-3 at 2 (emphasis added)), which contained a description of the TAF, (Dkt No. 52-1 § 9). Plaintiff Murray cannot now attempt to argue that she did not know "why she was being charged the [TAF]" despite having represented she understood what it was and its purpose: this is the exact scenario where the duty to read principle is necessary.

Put simply, Plaintiff Murray had until March 25, 2024, to bring claims under the Indiana Deceptive Consumer Sales Act. *See* IND. CODE § 24-5-0.5-5 ("[a]ny action brought under section 4(a) or 4(b) of this chapter may not be brought more than two (2) years after the occurrence of the deceptive act.") Yet, on August 2, 2024 – approximately two years and five months later – Murray filed her initial Complaint, alleging violations of the Indiana Deceptive Consumer Sales Act. (*See generally* Dkt No. 1.) By failing to bring her claims with the two-year statute of limitations period and representing to Metronet that she had read and understood Metronet's Terms and Conditions in March 2022, her Indiana claims are thus time-barred.

**5.       Plaintiffs Fail to State a Claim of Unjust Enrichment.**

Plaintiffs argue that because their unjust enrichment claim was not substantively changed in the Amended Complaint, the Court should deny Metronet's Motion, particularly where they argue that Plaintiffs "paid a fee and received nothing in return." (Dkt No. 61 at 15.) However, again, Plaintiffs ignore Metronet's argument.

Here, Plaintiffs all were made aware of the TAF via Metronet's advertisements, summary emails, and on their first monthly bill, but chose to contract with Metronet and maintain service with Metronet for *years*. While Plaintiffs argue that "none of [them] made any services calls or received any repairs to their Metronet-owned equipment," that argument misses the point because whether or not they actually made a claim covered by the TAF, they nonetheless entered into a valid and enforceable contract with Metronet. (Dkt No. 61 at 16.) Plaintiffs are attempting to skirt their pre-existing contractual obligations by bringing a claim of unjust enrichment; this is precisely

why Indiana courts have found that where a contract governs the parties' relationship, plaintiffs are unable to bring unjust enrichment claims. (*See* Dkt No. 53 at 15.)³

6. **Plaintiffs' Claims Are Barred By The Voluntary Payment Doctrine.**

The Court can and should grant Metronet's Motion on the basis of the voluntary payment doctrine. "'[W]hen an affirmative defense is disclosed in the complaint it provides a proper basis for a Rule 12(b)(6) motion." *Dixon v. Natl. Hot Rod Assn.*, 450 F. Supp. 3d 831, 842 (S.D. Ind. 2020) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)). Such is the case here, as Plaintiffs' Amended Complaint provides all necessary facts to support application of the voluntary payment doctrine.

Plaintiffs do not dispute the following facts discussed in the Motion (and admitted by Plaintiffs in their Amended Complaint) that form the basis of Metronet's voluntary payment doctrine argument:

- Plaintiffs claim they became aware of the TAF shortly after entering into their business relationship with Metronet (Am. Compl. ¶¶ 40, 49, 61); *see also* Dkt No. 53-2 (Plaintiff Murray's confirmation e-mail confirming her appointment on March 25, 2022, which details the TAF in two places); Dkt No. 53-5 (Plaintiff Perry's confirmation e-mail confirming his order for internet services on April 18, 2025, which details the TAF in two places); Dkt No. 53 at 13 ("Plaintiff Gold alleges he signed up for Metronet's internet service in March 2023 and that he learned of the TAF when he 'signed up with Metronet[.]'");

---

³ Plaintiffs' cited cases do not support their arguments. In *Copolillo*, the court analyzed a stock purchase agreement which included an orally-made provision regarding an additional amount to be paid by plaintiff. *See Copolillo v. Cort*, 947 N.E.2d 994 (Ind. Ct. App. 2011). In *Wilmoth*, the court analyzed alleged ambiguities in a contract and construed the ambiguity in favor of the class. *See Celadon Trucking Serv., Inc. v. Wilmoth*, 70 N.E.3d 833, 845 (Ind. Ct. App. 2017). Here, unlike *Copolillo*, there was no separate oral provision of the agreement between Metronet and the Plaintiffs. Rather, unlike *Wilmoth*, the TAF was expressly provided in the summary emails sent to Plaintiffs before signing up for Metronet's internet service, and each proceeded with installation despite being put on notice of the TAF and representing they had read and understood Metronet's Terms and Conditions. Plaintiffs' own failure to review the express notices provided *multiple times* throughout sign-up, and even after sign-up, warrants dismissal.

- Plaintiffs were in month-to-month contractual arrangements with Metronet such that they could have moved to another internet provider at any time (*id.* at ¶¶ 43, 64);

- Plaintiffs had other internet providers from whom they could obtain internet service (*id.* at ¶¶ 38, 43, 47, 52, 59, 64); and

- Plaintiffs continued to voluntarily pay the TAF even after discovering its supposed illegality (*id.* at ¶¶ 43, 64).[4]

Under these facts, the voluntary payment doctrine bars Plaintiffs' claims.

Although Plaintiffs argue that the doctrine does not apply because they alleged fraud, this so-called "fraud exception" is inapplicable because Plaintiffs continued paying the TAF monthly *for years*, even after the alleged fraud was discovered. Further, Plaintiffs' assertion of the so-called "fraud exception" is meritless because the fee was clearly disclosed in Metronet's Terms and Conditions, to which each Plaintiff agreed to when signing up for Metronet's internet services. It is well-established under Indiana, Kentucky, and Minnesota law that a party is presumed to have read and understood a contract upon its signature, and one cannot escape the terms of the contract by mere failure to read it. (*See* Dkt No. 53 at 12, n.3.) The Terms of Service disclosed the TAF in its own paragraph of the contract and explained its purpose. (Dkt No. 52-1)[5]:

---

[4] In fact, Perry remains a Metronet customer – and has paid the TAF every month – even after filing the original Complaint in August 2024, (Dkt No. 53 at 6), and Murray continued paying the TAF after filing the lawsuit (*compare* Am Compl. ¶ 43 (alleging Murray cancelled her service with Metronet on March 5, 2025), *with* Dkt No. 1 (filed on August 2, 2024)). At minimum, their claims must be dismissed.

[5] This excerpt reflects Metronet's current Terms and Conditions. Prior versions, although potentially slightly different, were substantially similar in disclosing the TAF.

> 9. **Tech Assure Fee.** The monthly Tech Assure Fee of up to $12.95 is required to receive our Broadband Services and covers any service call or broken Metronet-owned Equipment. If it is our Equipment or our wiring, inside or outside your home, we will fix or replace it, subject to the following:
>
>    a. **Coverage.** If any Metronet-owned Equipment is willfully damaged, modified, lost, destroyed, tampered with, or stolen while in your possession, you will be responsible for the reasonable cost of repair or replacement of the affected Equipment. Installation and/or reactivation charges are not included in the Tech Assure Fee. When you call us to report trouble with a Broadband Service, we will test to determine the origin of the problem. If we determine that the problem is coming from a source within your premises including, but not limited to, you're your equipment or wiring you installed, we reserve the right to charge you for any work we perform on your behalf to fix the problem.
>
>    b. **Exceptions to Coverage.** The following are excluded and not a part of this section: (i) any damage caused by an "Act of God" (earthquake, flood, acts of war, fire, lightning, wind or fire); (ii) grossly negligent or willful damage caused by you to the inside wiring; (iii) your grossly negligent or willful damage to our Equipment (iv) any wiring you install; (v) repair or replacement of any of your equipment; (vi) repair or replacement of wires or jacks that we cannot access; (vii) any wiring issues that existed prior to the date we installed the Services at your premises; and (viii) problems occurring in any horizontal or vertical risers owned by another party.

Plaintiffs do not dispute the fact that the TAF was disclosed to Plaintiffs at the very start of their contractual relationship with Metronet. Plaintiffs should not be permitted to assert a fraud-based claim based on omission when the allegedly fraudulent fee is not, in fact, omitted. In light of the fact that the TAF is clearly and prominently disclosed in the terms of the contract that binds the parties, and each Plaintiff voluntarily paid the TAF for months on end, the voluntary payment doctrine bars Plaintiffs' claims.

7. **Both the Anonymous Complaints and Complaints to State Agencies Should be Stricken.**

In their Opposition, Plaintiffs argue that the Court "declined to grant Metronet's first attempt to strike the customer reviews in Plaintiffs' Complaint." (Dkt No. 61 at 18.) Notably, the Court's April 18 Order is devoid of any discussion or decision regarding Metronet's Motion to Strike Paragraph 47 of the original Complaint. (*See generally* Dkt No. 51.) Notwithstanding this, Plaintiffs re-argue that Metronet "will have a chance to address and refute" the allegations in the anonymous online complaints and their "allegations…are not so unrelated to their claims,

prejudicial, or unworthy of consideration, that the Court must strike them from the Amended Complaint." (Dkt No. 61 at 18-19.)

This is not so. With respect to Paragraph 65 of the Amended Complaint, Metronet is deprived of any opportunity to refute such anonymous complaints, nor can either party adequately verify the truth of such complaints. Further, Plaintiffs have not alleged that they posted any of the anonymous reviews, nor that they submitted complaints to their respective state attorney generals. Without such allegations, these anonymous complaints and submissions to the state attorney generals do not "give context" to Plaintiffs' claims, and thus should be stricken.

## CONCLUSION

For all these reasons, and the reasons set forth in Metronet's Memorandum in Support (Dkt No. 53), Metronet respectfully requests that this Court grant Metronet's Motion to Dismiss, with prejudice. Alternatively, Metronet requests that this Court strike Paragraph 65 and Exhibit A from the Amended Complaint.

Dated: June 20, 2025

Respectfully submitted,

By: */s/ Scott T. Schutte*
    Scott T. Schutte
    Spenser B. Jaenichen
    Allison R. Heil
    **MORGAN, LEWIS & BOCKIUS LLP**
    110 North Wacker Drive, Suite 2800
    Chicago, IL 60606-1511
    Phone: 312.324.1000/Fax: 312.324.1001
    scott.schutte@morganlewis.com
    spenser.jaenichen@morganlewis.com
    allison.heil@morganlewis.com

    *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

  I, Scott T. Schutte, an attorney, certify that I filed the foregoing Reply using the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record on this 20th day of June, 2025.

               */s/ Scott T. Schutte*
               Scott T. Schutte